Filed 2/6/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| BHIKA RAM et al, <br><br>     Plaintiffs and Appellants, <br><br> v. <br><br> ONEWEST BANK, FSB et al, <br><br>     Defendants and Respondents. | A139055 <br><br> (Contra Costa County <br> Super. Ct. No. MSC12-01755) |

I.
INTRODUCTION

Bhika Ram and his spouse, Asharfun Nisha Hafiz, purchased a home subject to a deed of trust in 2005. After they defaulted on their home loan, nonjudicial foreclosure proceedings were initiated, and the beneficiary of the deed of trust, OneWest Bank, FSB (OneWest), purchased the property at the foreclosure sale. Ram and Hafiz filed this action against OneWest and other entities, alleging that the sale was void due to irregularities in the foreclosure proceedings. OneWest filed a demurrer, which was sustained by the trial court with leave to amend some claims. Ram and Hafiz did not amend their complaint, and the trial court dismissed the case against OneWest.

On appeal, Ram and Hafiz challenge this dismissal, principally claiming that the foreclosure sale was void because the predicate notice of default was executed and recorded by an entity claiming to be the trustee of OneWest several weeks before OneWest signed and recorded documents formally designating that entity as such.

We conclude that there was no statutory defect in the manner or timing of the trustee substitution, but even if so, the entity was otherwise authorized to act for OneWest

1

in filing the notice of default because it was alleged that the entity was at all times acting as the agent of OneWest.

Alternatively, we conclude that any alleged defect or omission in the representation of OneWest at the time the notice of default was filed was not substantial within the meaning of the law of foreclosure, making the subsequent sale at most voidable, and not void. Because the sale was, at worst, only voidable, the borrowers in default were required to allege tender and prejudice, which they did not do.

Accordingly, the trial court was correct in sustaining OneWest's demurrer, and in subsequently dismissing the action.

## II.
## FACTUAL AND PROCEDURAL BACKGROUNDS

A.     The Loan and the Foreclosure Proceedings

In 2005, Ram and Hafiz obtained a loan for $396,200 to purchase a home in Pleasant Hill. They executed and recorded a deed of trust listing the lender and beneficiary as First Federal Bank of California (First Federal) and the trustee as Seaside Financial Corporation. The loan carried a variable interest rate and had a term of 40 years.

Thereafter, First Federal was ordered closed by the federal government, and the Federal Deposit Insurance Corporation (FDIC) was appointed receiver. At the end of March 2010, the FDIC assigned the loan to OneWest and a deed of trust confirming that assignment was recorded in Contra Costa County on April 23, 2010.

On September 7, 2010, a notice of default was executed and recorded by Aztec Foreclosure Corporation (Aztec) "[a]s [t]rustee."[1] The notice stated that, as of that time, Ram and Hafiz were almost $16,000 in default on their mortgage payments due under the loan. The borrowers were told in this notice that foreclosure could be stopped by payment of the arrearages. Also, it stated that "[u]pon your written request, the

---

[1] The notice of default was signed by LSI Title Company "[a]s [a]gent" of Aztec, "[a]s [t]rustee."

2

beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary and mortgagee may mutually agree in writing prior to the time the notice of sale is posted . . . to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default . . . ."

The notice also indicated that contact should be made with OneWest in care of Aztec. An address and two telephone numbers were provided. It also was accompanied by the declaration of a person with INDYMAC Mortgage Servicing indicating that due diligence had been exercised in trying to contact Ram and Hafiz to discuss their financial situation and to explore options to avoid foreclosure and that more than 30 days had elapsed since those efforts had been completed, in conformance with California law.

OneWest did not formally execute a substitution naming Aztec as the trustee until September 24, 2010, several weeks after it was identified as trustee on the notice of default. This substitution was recorded on December 9, 2010, the same day that Aztec recorded a notice of trustee's sale. The foreclosure sale was postponed until April 18, 2011, and then again postponed until June 6, 2011, when the property was finally sold to OneWest for an amount far less than what was then owed by Ram and Hafiz on the loan.

B.     The Procedural Background

The operative complaint is the first amended complaint (FAC) which states 13 causes of action against OneWest, Aztec, and First Federal: wrongful foreclosure, intentional and negligent fraud, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, negligence, unfair business practices, cancellation of deed upon sale, quiet title, declaratory relief, wrongful eviction, willful lockout, and injunctive relief. In the FAC, Ram and Hafiz alleged that the foreclosure sale was void because Aztec had not been substituted as trustee at the time it recorded the notice of default and therefore it lacked the authority to initiate the foreclosure proceedings. The FAC does not allege that Ram and Hafiz tendered, or were ready,

3

willing, and able to tender, the amount owed on the loan at any time between the time of the notice of default was recorded in early September and the foreclosure and sale that took place nine months later on June 6, 2011.

In sustaining One West's demurrer, the trial court reasoned that Ram and Hafiz failed to state a claim for wrongful foreclosure based on the timing of Aztec's substitution as trustee "because a notice of default can be recorded before a notice of substitution of trustee." The court further held that where "the alleged wrongful foreclosure is the result of a defect in the required notice, the transaction is voidable, not void" and that in any further amendment to the complaint Ram and Hafiz would have to "allege sufficient facts of tender." The court also sustained the demurrer to the causes of action for intentional and negligent fraud, breach of the implied covenant of good faith and fair dealing, and negligence with leave to amend. It determined that the causes of action for unfair business practices, cancellation of deed upon sale, quiet title, and declaratory relief were "predicated on the wrongful foreclosure and fraud causes of action to which demurrers ha[d] been sustained with leave to amend," and it therefore sustained the demurrer with leave to amend as to those causes of action as well. Finally, the court sustained the demurrer without leave to amend as to the remaining claims.

After Ram and Hafiz failed to amend the complaint, the trial court granted OneWest's application for an order dismissing the action against OneWest with prejudice.[2]

---

**2** The opening brief filed by Ram and Hafiz is limited to challenging the court's sustaining of OneWest's demurrer to the causes of action based on alleged irregularities with the notice of default and substitution of trustee. Ram and Hafiz set out these causes of action as wrongful foreclosure, quiet title, declaratory relief, cancellation of instrument, and unfair business practices. Accordingly, we deem the other causes of action to be abandoned, and we will not address them further. (*Bagley v. International Harvester Co.* (1949) 91 Cal.App.2d 922, 926 [where demurrer is sustained without leave to amend, appellant's failure to advance arguments in connection with one of several causes of action purportedly stated in complaint deemed an abandonment of such cause of action]; see also *In re Sade C.* (1996) 13 Cal.4th 952, 994 [issues not raised in an appellant's brief are deemed waived or abandoned].)

4

III.
DISCUSSION

A.     The Order of Dismissal Against OneWest Is an Appealable
       Judgment

The order dismissing the action against OneWest did not dismiss the action against Aztec or First Federal.  Ram and Hafiz argue that this order is nevertheless an appealable final judgment.  Although OneWest does not contend otherwise, "we are duty bound to consider" the question of appealability because it implicates our jurisdiction.  (*Olson v. Cory* (1983) 35 Cal.3d 390, 398.)  "Under the 'one final judgment' rule, an order or judgment that fails to dispose of all claims between the litigants is not appealable under Code of Civil Procedure section 904.1, subdivision (a)."  (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 436.)  This rule does not apply, however, " 'when the case involves multiple parties and a judgment is entered which leaves no issue to be determined as to one party.  [Citations.]' "  (*Id*. at p. 437.)  Accordingly, the "one final judgment" rule does not bar this appeal.

B.     Standard of Review

We review de novo a dismissal after a demurrer is sustained.  (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501.)  Regardless of the label given to a cause of action, "[o]ur task is to determine whether the pleaded facts state a cause of action on any available legal theory."  (*Saunders v. Cariss* (1990) 224 Cal.App.3d 905, 908.)  "We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions[,] or conclusions of law."  (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)  "[W]e are not bound by the trial court's analysis" of questions of law and "independently construe statutory law."  (*City of Morgan Hill v. Bay Area Air Quality Management Dist.* (2004) 118 Cal.App.4th 861, 870.)

In addition, when a demurrer is sustained with leave to amend, but the plaintiff elects not to amend, it is presumed on appeal that the complaint states the strongest case

5

possible. (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1091.) Thus, a judgment of dismissal following the failure to amend must be affirmed if the unamended complaint is objectionable on any ground raised in the demurrer. (*Soliz v. Williams* (1999) 74 Cal.App.4th 577, 585.)

        C.      Statutory Framework Governing Nonjudicial Foreclosure Sales

We begin with a general overview of the applicable law. A nonjudicial foreclosure sale is a "quick, inexpensive[,] and efficient remedy against a defaulting debtor/trustor." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830.) To preserve this remedy for beneficiaries while protecting the rights of borrowers, "Civil Code sections 2924 through 2924k provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust." (*Ibid.*) Under a deed of trust, the trustee holds title and has the authority to sell the property in the event of a default on the mortgage. (See *Haynes v. EMC Mortgage Corp.* (2012) 205 Cal.App.4th 329, 333-336.) To initiate the foreclosure process, "[t]he trustee, mortgagee, or beneficiary, or any of their authorized agents" must first record a notice of default. (Civ. Code,[3] § 2924, subd. (a)(1).) The notice of default must identify the deed of trust "by stating the name or names of the trustor or trustors" and provide a "statement that a breach of the obligation for which the mortgage or transfer in trust is security has occurred" and a "statement setting forth the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy [the] obligation . . . that is in default." (§ 2924, subd. (a)(1)(A)-(C).) After three months, a notice of sale must then be published, posted, mailed, and recorded in accordance with the time limits prescribed by the statute. (§§ 2924, subd. (a)(3), 2924f.)

The "traditional method" to challenge a nonjudicial foreclosure sale "is a suit in equity . . . to have the sale set aside and to have the title restored." (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 103 (*Lona*).) Three elements must be proven: "(1) the trustee . . . caused an illegal, fraudulent, or willfully oppressive sale of real property

---

[3] All further statutory references are to the Civil Code, unless otherwise indicated.

pursuant to a power of sale in a . . . deed of trust; (2) the party attacking the sale suffered prejudice or harm; and (3) the trustor . . . tenders the amount of the secured indebtedness or was excused from tendering." (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 800 (*West*).)

The first element—wrongfulness—can be satisfied by a variety of procedural defects, such as noncompliance with the requirements for notice or the trustee's lack of authority to foreclose. (*Lona*, *supra*, 202 Cal.App.4th at pp. 104-105.) The second element—prejudice—is met where an irregularity in the proceeding adversely affects the trustors' ability to protect their interest in the property. "Prejudice," however, "is not presumed from 'mere irregularities' in the process." (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 272 [slight defects in timing of notice of sale and in statement of date of default were not prejudicial].) The third element—tender—requires the trustor to make "an offer to pay the full amount of the debt for which the property was security." (*Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 578.) "Because the action is in equity, a defaulted borrower who seeks to set aside a trustee's sale is required to do equity before the court will exercise its equitable powers." (*Lona*, at p. 112.)

But trustors attacking a *void* deed are "not required to meet any of the burdens imposed when, as a matter of equity, a party wishes to set aside a voidable deed." (*Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868, 878 (*Dimock*).) A sale is not rendered void merely because of minor or technical defects. (See *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 95-99.) A sale is rendered void, though, when the defects are substantial, such as when there has been a failure to give notice of sale to the trustor or to specify the correct default in the notice of default. (*Anderson v. Heart Federal Sav. & Loan Assn.* (1989) 208 Cal.App.3d 202, 211-212; *Little v. CFS Service Corp.* (1987) 188 Cal.App.3d 1354, 1357-1359, 1362.) Similarly, a sale is rendered void when the foreclosure sale is conducted by an entity that lacks authority to do so. (*Pro Value Properties, Inc. v. Quality Loan Service Corp.* (2009) 170 Cal.App.4th 579, 581, 583; *Dimock*, at pp. 874-875; but see *Jones v. First American Title Ins. Co.* (2003)

107 Cal.App.4th 381, 388-390 [mutual mistake regarding status of prior trustee after recorded substitution justified reformation of otherwise void sale].)

Former Chief Justice Malcolm Lucas wrestled with the somewhat elusive distinction between "void" and "voidable" nonjudicial foreclosure sales in *Little v. CFS Service Corp., supra*, 188 Cal.App.3d 1354, where he explained: " 'The word "void," in its strictest sense, means that which has no force and effect, is without legal efficacy, is incapable of being enforced by law, or has no legal or binding force, but frequently the word is used and construed as having the more liberal meaning of "voidable." ' (Black's Law Dict. (5th ed. 1979) p. 1411, col. 2.) 'Voidable' is defined as '[t]hat which may be avoided, or declared void; not absolutely void, or void in itself. . . .' " (*Id*. at p. 1358.)

In the end, the importance of any distinction between a "void" or "voidable" nonjudicial foreclosure sale is simply whether the borrower, who is in default, must allege and prove a prerequisite tender of the amount due under the deed of trust and otherwise to show prejudice resulting from the defect, omission, or failure, before the sale will be set aside. In deciding whether to require a showing of tender and prejudice, courts appear to focus on the nature and severity of the defect, omission or failure and its practical effect on the foreclosure process.

### D. Ram and Hafiz Have Failed To State a Claim for Wrongful Foreclosure

#### 1. *The Applicable Foreclosure Statutes Authorize the Foreclosure Procedure Employed Here*

Ram and Hafiz assert that the trial court erred in sustaining the demurrer to their wrongful foreclosure claim and in requiring them to amend their complaint to allege tender of the amount of their secured debt because the foreclosure sale was void under the statutes governing the nonjudicial foreclosure process. They argue the sale was void because Aztec did not yet hold the title of "trustee" as claimed on the notice of default, and was only formally named as trustee several weeks later, when OneWest executed a substitution of trustee naming Aztec as the trustee. Ram and Hafiz claim the defective notice irremediably "broke the chain of recorded title rendering all subsequent

8

foreclosure proceedings, including the trustee's sale, void and of no effect." We disagree.

In the first instance, Ram and Hafiz have not made a convincing case that there was any defect or omission in the default and foreclosure process relating to their mortgaged property. We note that several statutory provisions contemplate that an entity may be substituted as trustee even where substitution is not "recorded" or "effected" until after the notice of default is recorded, so long as notice is given to the trustor/borrowers.

First, section 2934a, subdivision (b) provides: "If the substitution is executed, but not recorded, prior to or concurrently with the recording of the notice of default, the beneficiary or beneficiaries or their authorized agents shall cause notice of the substitution to be mailed prior to or concurrently with the recording thereof, in the manner provided in Section 2924b, to all persons to whom a copy of the notice of default would be required to be mailed by the provisions of Section 2924b. An affidavit shall be attached to the substitution that notice has been given to those persons and in the manner required by this subdivision."

*Alternatively*, subdivision (c) provides: "If the substitution is *effected* after a notice of default has been recorded but prior to the recording of the notice of sale, the beneficiary or beneficiaries or their authorized agents shall cause a copy of the substitution to be mailed, prior to, or concurrently with, the recording thereof, in the manner provided in Section 2924b, to the trustee then of record and to all persons to whom a copy of the notice of default would be required to be mailed by the provisions of Section 2924b. An affidavit shall be attached to the substitution that notice has been given to those persons and in the manner required by this subdivision." (Italics added.)

Thus, the statutory process under which foreclosures may proceed in this state contemplates *both* the circumstance where the substitution of trustee is executed but not recorded until after the notice of default is recorded, *and* the circumstance here where the

9

substitution is first "effected"[4] after the notice of default is recorded. It is the second circumstance contemplated by the statute that applies here. As OneWest complied with the procedure authorized by the Legislature, the supposed defect of which Ram and Hafiz complain cannot form the basis for rendering the ensuing trustee's sale not just voidable, but absolutely void.

2.    *Alternatively, Aztec Had Authority To Execute the Notice of Default as OneWest's Agent*

Ram and Hafiz 's argument that Aztec did not have authority to execute the notice of default fails not only because Aztec was eventually substituted as trustee but also because they affirmatively alleged that at all times, Aztec was acting as the agent of OneWest. Section 2924 authorizes a notice of default to be recorded by "the trustee, mortgagee, or beneficiary, *or any of their authorized agents*." (§ 2924, subd. (a)(1), italics added.) Section 2924 does not define what constitutes an "authorized agent," but elsewhere in the foreclosure statute a "person authorized to record the notice of default or the notice of sale" is defined to include "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee." (§ 2924b, subd. (b).) In general terms, an agent may be authorized to do any act the principal is empowered do. (§§ 2304, 2305.)

Because it is presumed the nonjudicial foreclosure was properly conducted, Ram and Hafiz had the burden to plead "affirmatively" facts showing Aztec lacked authority to record the notice of default. (*Fontenot*, *supra*, 198 Cal.App.4th at p. 270.) We paraphrase the recent holding in *Rossberg v. Bank of America, N.A* (2013) 219 Cal.App.4th 1481, to fit the facts of this case: "Accordingly, to state a claim based on [Aztec's] purported lack of authority to record the Notice of Default, [Ram and Hafiz] had to allege not only that [Aztec] was not the trustee under the First Deed of Trust, but

---

**4** The verb "effect" means: "1 : to cause to come into being [¶] 2 a : to bring about . . . [¶] b : to put into operation." (http://merriam-webster.com/dictionary/effect (as of Feb. __, 2015).)

also that [Aztec] was not the agent of the trustee or beneficiary. [Citations.]" (*Id.* at pp. 1496-1497.)

Nothing in the FAC or judicially noticed documents suggests that Aztec was not authorized to act for OneWest, the beneficiary under the deed of trust. In fact, the FAC specifically alleges that "at all relevant times herein mentioned, each of defendants sued herein was the agent . . . of each of the remaining defendants and was at all times acting within the purpose and scope of such agency and/or employment."

Ram and Hafiz cannot have it both ways. Their argument that Aztec was unauthorized to issue the notice of default is undermined by their own assertion that Aztec, at all times, was acting as the alleged agent of OneWest conferring undeniable authority to record the notice of default. (See *Rossberg v. Bank of America, N.A.*, *supra*, 219 Cal.App.4th at p. 1496 [regardless whether entity's substitution as trustee was valid, its recording of notice of default as " 'either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary' " was valid (italics omitted)]; *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 515-516 [entity properly executed notice of default " 'as agent for beneficiary,' rather than as the trustee" prior to its substitution as trustee]; *West*, *supra*, 214 Cal.App.4th at p. 801 [same].)

Furthermore, the recorded documents in this case indicate that even if Aztec lacked authority to sign the notice of default as trustee at the time it took this action, Aztec's authority was subsequently ratified by OneWest when it formally named Aztec as trustee several weeks later. " 'Ratification is the voluntary election by a person to adopt in some manner as his own act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if originally authorized by him. [Citations.]' " (*Estate of Stephens* (2002) 28 Cal.4th 665, 673.) The effect of ratification is to vest the agent with authority that relates back to the time when the agent performed the act. (*White v. Moriarty* (1993) 15 Cal.App.4th 1290, 1295.)

11

Aztec's substitution as trustee, which was executed within weeks of Aztec's issuing the notice of default, unmistakably evinces an intent by OneWest to ratify Aztec's authority to initiate the foreclosure proceedings.  In order to avoid the effect of this ratification, Ram and Hafiz, as third parties, would be required to prove they were prejudiced by Aztec's unauthorized actions.  (§ 2313; *Archdale v. American Internat. Specialty Lines Ins. Co.* (2007) 154 Cal.App.4th 449, 480.)  Ram and Hafiz have not alleged they suffered any prejudice.

### 3. *Aztec Was Undeniably the Trustee in Authority at the Time It Conducted the Foreclosure Sale*

Once OneWest executed a substitution of trustee, naming Aztec as the trustee of the deed of trust on September 24, 2010, it had the effect of immediately transferring to Aztec the power to act as trustee under the foreclosing deed of trust, even though the substitution of trustee was not recorded until December 9, 2010, and the trustee's sale did not take place until June 6, 2011.

Section 2934a, subdivision (d), states:  "A trustee named in a recorded substitution of trustee shall be deemed to be authorized to act as the trustee under the mortgage or deed of trust for all purposes from the date the substitution *is executed* by the mortgagee, beneficiaries, or by their authorized agents. . . . *Once recorded, the substitution shall constitute conclusive evidence of the authority of the substituted trustee or his or her agents to act pursuant to this section.*"  (Italics added.)  Consequently, the recorded substitution of trustee constituted conclusive evidence that Aztec had the authority to conduct the trustee's sale and to convey title to Ram's and Hafiz's home to the highest bidder, even if the notice of default was improperly signed and recorded by Aztec before it became trustee.

In an attempt to avert the legal impact of Aztec's substitution as trustee months before it conducted the trustee's sale, Ram and Hafiz complain that the recorded substitution of trustee, which is a single-page document, did not include an affidavit of mailing showing it was mailed to the trustee of record or other persons, *if any*, who may have requested notice of default and notice of sale under section 2924b.  This failure to

include an affidavit of mailing, they claim, constitutes a clear violation of section 2934a, subdivision (c), which invalidates the substitution of trustee.

But, as OneWest points out in response, the deed of trust entered into by the parties gave OneWest the option of substituting a successor trustee without the need to confirm that substitution with an affidavit. The deed of trust provides: "Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the instrument number and recording date where this Deed of Trust is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law." OneWest followed this procedure in substituting Aztec as trustee.

It is well settled that parties to a deed of trust may agree to a form of substitution of trustee other than that provided in Civil Code section 2934a. (*Jones v. First American Title Ins. Co., supra,* 107 Cal.App.4th at p. 390.) In determining "whether parties to a deed of trust may agree to a form of notice of substitution of trustee which does not comply with the statutory form of such substitution," the court in *U.S. Hertz, Inc. v. Niobrara Farms* (1974) 41 Cal.App.3d 68 observed the "decisions leave no doubt that parties may lawfully contract as to the form of and procedure to be employed in effecting such substitution." (*Id*. at p. 84.) Thus, "the substitution can be accomplished by following the procedure set forth in the deed of trust, and it will be valid even though there has not been compliance with the statutory requisites." (4 Miller & Starr, Cal. Real Estate (3d ed.2011) § 10:9, and cases cited therein.) Consequently, Ram and Hafiz have failed to allege facts showing the substitution of trustee was void because OneWest was not required to include an affidavit of mailing under section 2934a, subdivision (c).

It bears reemphasis that once recorded, a "substitution [of trustee] shall constitute *conclusive evidence* of the authority of the substituted trustee or his or her agents to act

13

pursuant to this section." (§ 2934a, subd. (d), italics added.) "[C]onclusive evidence" cannot be contradicted by any evidence to the contrary. (*Pullen v. Heyman Bros.* (1945) 71 Cal.App.2d 444, 452.) It is not our role to second-guess the Legislature's determination that the authority of a substituted trustee should be conclusively established by recordation of the substitution—particularly since this legislative mandate ostensibly furthers public policy by promoting the finality of trustee sales and the marketability of real property.

Here, Aztec was named as the successor trustee in the recorded substitution of trustee, constituting conclusive evidence of Aztec's authority to exercise all the powers of trustee. (See *West*, *supra*, 214 Cal.App.4th at p. 801.) Therefore, despite any claimed error in the notice of default, Aztec undeniably was given conclusive authority to act as the trustee under the deed of trust, to record the notice of sale, to conduct that sale, and to issue the trustee's deed to the highest bidder.

### 4. *The Foreclosure Sale Was, At Worst, Voidable, Not Void*

Even if we indulge Ram's and Hafiz's argument that there was a procedural irregularity created because Aztec executed the notice of default as trustee several weeks before it actually became the trustee of record, we conclude that this defect was not so substantial that it would render the entire foreclosure process null and void. Therefore, we find Ram and Hafiz were not excused from alleging prejudice arising from the late perfection of Aztec's substitution as trustee and from alleging the tender of the unpaid and overdue amount they owed on their mortgage.

The primary purpose of a notice of default is to provide notice of the amount in arrears and an opportunity to cure the default. (*Knapp*, *supra*, 123 Cal.App.4th at p. 99.) In order for a defect in the notice of default to be material, it must cause prejudice. (*Ibid.*) Ram and Hafiz do not allege that they were misled or prejudiced by the notice of default or that the information stated in the notice of default was erroneous. Their only claim is that the wrong entity signed it. "Courts have rejected claims of deficient notice where no prejudice was suffered as the result of a procedural irregularity." (*Pantoja v. Countrywide Home Loans, Inc.* (N.D.Cal. 2009) 640 F.Supp.2d 1177, 1186-1187

14

[rejecting claim that a notice of default signed by alleged nonbeneficiary entitled borrower to relief from foreclosure, when borrower failed to allege prejudice].)

In a case similar to this one, the borrower in *Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433 challenged the nonjudicial foreclosure by arguing the trustee lacked authority to conduct the foreclosure because the trustee recorded the notice of default several months *before* the substitution of trustee was recorded. (*Id.* at p. 443.) Despite this purported lack of authority, the *Debrunner* court rejected the borrower's wrongful foreclosure claim because the borrower failed to show how "any technical defect" in the notice of default prejudiced him by impairing his ability to either prevent or to contest the foreclosure. (*Id.* at pp. 443-444; see also *U.S. Hertz, Inc. v. Niobrara Farms*, *supra*, 41 Cal.App.3d at p. 85 [a notice of substitution of trustee that was recorded a minute after a notice of default was recorded does not warrant setting aside the foreclosure sale].)

Ram and Hafiz argue cases like *Debrunner* and *U.S. Hertz* do not apply here because they involve the delayed recording of documents already in existence granting authority to the entity that signed the notice of default, where in this case the notice of default was executed and recorded by an entity described as trustee before there were any documents in existence granting it that authority. However, in so arguing, they misconstrue the significance of these cases. Although we have found no case like this one involving an entity that recorded the notice of default "as trustee" before it was named as trustee, the cases unmistakably establish a borrower's burden to show how the alleged defect in the notice of default prejudiced the borrower's interests. As was observed in *Fontenot v. Wells Fargo Bank, N.A.*, *supra*, 198 Cal.App.4th at page 272, "a plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests."

We also note that even though they were given an opportunity to amend the FAC, Ram and Hafiz have not satisfactorily pleaded the ability to tender, which is necessary to proceed on a claim of wrongful foreclosure. "As a general rule, a debtor cannot set aside

15

the foreclosure based on irregularities in the sale without also alleging tender of the amount of the secured debt. [Citations.]" (*Shuster v. BAC Home Loans Servicing, LP* (2012) 211 Cal.App.4th 505, 512; accord, *Arnolds Management Corp. v. Eischen, supra,* 158 Cal.App.3d at p. 578 ["an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security"]; *Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1063 [if the sale is facially valid but there is some procedural irregularity in notice procedures, it is voidable requiring tender].) "The rationale behind the rule is that if [the borrower] could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the [borrower]." (*FPCI Re-Hab 01 v. E & G Investments, Ltd.* (1989) 207 Cal.App.3d 1018, 1022.)

The plaintiff in *West*, *supra*, 214 Cal.App.4th 780 also sought to set aside a foreclosure sale, claiming "only procedural irregularities in the sale notice and procedure." (*Id.* at p. 802.) Like Ram and Hafiz, the plaintiff argued that "an offer, or tender to pay the debt, is not required[] (where it would be inequitable), such as where plaintiffs have a legal right to avoid the sale." (*Ibid.*, underscoring omitted.) The appellate court disagreed: "The trustee's deed upon sale recites that the trustee complied with the deed of trust and all applicable statutory requirements of the State of California. No inconsistent recitals appear on the face of the trustee's deed. Thus, any notice defects are deemed voidable, not void. [Citations.] [Appellant] therefore was required to allege tender of the indebtedness to seek to set aside the trustee's sale." (*Ibid.*)

In this case, as in *West*, the trustee's deed upon sale recites that the trustee complied with the deed of trust and all applicable statutory requirements of the State of California. No inconsistent recitals appear on the face of the trustee's deed. Thus, any notice defects are deemed voidable, not void. (*West*, *supra*, 214 Cal.App.4th at p. 802; accord, *Little*, *supra*, 188 Cal.App.3d at p. 1359 ["[w]here there has been a notice defect and conclusive presumption language in the deed, courts have characterized the sale as

16

'voidable' "].)  Ram and Hafiz were therefore required to allege tender of the indebtedness to seek to set aside the trustee's sale.

Finally, none of the cases cited by Ram and Hafiz grant relief from foreclosure, without a showing of tender or prejudice, due solely to an alleged lack of authority in signing a notice of default.  For example, *Dimock*, *supra*, 81 Cal.App.4th at page 874 involved a case where the lender substituted an entity called Calmco as its trustee in place of its former trustee, Commonwealth.  Despite this substitution, Commonwealth conducted the sale and conveyed the deed on behalf of the lender to the buyer.  (*Id.* at pp. 872-873.)  The *Dimock* court held the trustee's deed upon sale was void on its face because the substitution of trustee transferred all of Commonwealth's interest in the property to the second trustee, Calmco, and therefore Commonwealth had no interest it could convey to the purchaser through the deed.  (*Id.* at pp. 876-878.)

*Dimock* provides no basis for setting this sale aside.  The issue in this case with regard to Aztec's legal authority to execute the notice of default has nothing to do with the nonjudicial foreclosure sale or Aztec's authority to conduct that sale.  Unlike the facts in *Dimock*, Aztec clearly was the lawful trustee for OneWest at the time it executed and recorded the notice of trustee's sale in December 2010, and when it executed and recorded the trustee's deed upon sale in June 2011.  A defect in the notice of default that has no bearing on the legal status of the parties at the time of nonjudicial foreclosure sale cannot become an immutable obstacle, in perpetuity, to the lender's efforts to recover that to which the parties agreed by contract and the remedy allowed by law.

The case of *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1100 is equally inapposite.  The portion of its holding cited by appellants references simply the *Dimock*-like circumstance where the foreclosure sale is found to be void "rather than voidable, such as when a plaintiff proves that the entity lacked the authority to foreclose on the property. [Citations.]" (*Glaski*, at p. 1100.)  Thus, unsurprisingly in that case, like in *Dimock*, no tender was necessary.

Even more attenuated is appellants' reliance on Division One's decision in *Ung v Koehler* (2005) 135 Cal.App.4th 186.  That case involved the question of whether a 10-

17

year or 60-year statute of limitations should apply to a lender's power of sale. It was in this context of determining which statute of limitation period applied that the court indicated that a trustee's sale based on a statutorily deficient notice of default is invalid. (*Id*. at pp. 202-203.) That indication, however, is taken out of context because *Ung* did not involve a borrower's wrongful foreclosure claim and did not address the prejudice or tender requirements.

In short, none of these cases supports the conclusion that Aztec's alleged defective trustee status at the time the notice of default was recorded, but which was cured long before the trustee's sale of the property in question, "voids" the later foreclosure and sale. Thus, Ram and Hafiz cannot avoid the applicable law requiring tender of the amount due under the deed of trust and requiring facts showing prejudice from the alleged irregularity in the notice of default. Therefore, as a matter of law, they have not alleged facts establishing their claim for wrongful foreclosure, which is fatal to their FAC.

## IV.
## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to OneWest.

_____

RUVOLO, P. J.

I concur:

_____

REARDON, J.

A139055, *Ram v. OneWest Bank*

19

HUMES, J., Concurring
Ram v. OneWest Bank
A139055

I agree with the majority that we must sustain the trial court's grant of the demurrer to Ram's and Hafiz's complaint because the complaint failed to allege sufficient prejudice. The complaint was filed long after the foreclosure sale, and its allegations do not support a reasonable inference that the sale could have been avoided if the alleged statutory violation had never happened. But I disagree with the majority's conclusion that the complaint insufficiently alleged that Aztec lacked proper authority to initiate the foreclosure. Allegations that an entity recorded a notice of default before it had proper authority could support a claim in a case, unlike this one, in which prejudice could be shown.

I.

In my view, Ram and Hafiz sufficiently alleged a violation of the nonjudicial foreclosure statutes by alleging that Aztec lacked authority to initiate the foreclosure either as OneWest's trustee or as its agent. As to Aztec's status as trustee, the majority concludes, as did the trial court, that Ram's and Hafiz's allegations are insufficient because Civil Code section 2934a, subdivision (c)[1] authorizes the substitution of a trustee after a notice of default is recorded. This observation about section 2934a, subdivision (c) is true, but only as far as it goes. To be sure, the nonjudicial foreclosure statutes are not violated simply because a trustee is substituted after the notice of default is recorded. But, in my view, the substituted trustee must either have had actual authority to record the notice of default at the time the notice was recorded or be substituting in for a trustee that had such authority. Nothing in section 2934a, subdivision (c) or any other provision gives an entity first becoming the trustee after the recording of the notice of default retroactive authority to have recorded the notice.

The statutes make clear that the notice of default must be recorded by "[t]he trustee, mortgagee, or beneficiary, or any of their authorized agents." (§ 2924,

_____

[1] All further statutory references are to the Civil Code.

1

subd. (a)(1).) Section 2934a, subdivision (d) provides that a "trustee named in a recorded substitution of trustee shall be deemed to be authorized to act as the trustee under the . . . deed of trust for all purposes *from the date the substitution is executed*." (Italics added.) Under this plain language, a substitution of trustee is not effective until the date it is executed. The majority correctly points out that the substitution, once recorded, is conclusive evidence of the trustee's authority. But the majority fails to explain how the conclusiveness of the trustee's authority after the recording of the substitution somehow confers on the substituted trustee retroactive authority to have acted as trustee before the substitution was signed.[2]

Since Ram and Hafiz adequately alleged that Aztec lacked authority as trustee when the notice of default was recorded, I turn to whether they adequately alleged that Aztec lacked authority to record the notice as an agent. In my view, they did. Initially, I agree with the majority that Aztec would have been authorized to record the notice of default under section 2924, subdivision (a)(1) if, regardless of its trustee status, it was otherwise acting as OneWest's authorized agent. But on the record before us we cannot know whether Aztec was such an agent. Whether an entity is an agent is normally a factual determination "not subject to resolution by demurrer." (*Childs v. State of California* (1983) 144 Cal.App.3d 155, 163.)

The majority contends that Aztec's status as an agent was conceded by Ram and Hafiz because the complaint alleges that "[p]laintiffs are informed and believe . . . each of [the] defendants . . . was the agent . . . of each of the remaining defendants and was at all times acting within the purpose and scope of such agency. . . ." But this places far too much significance on this general allegation, and the majority mistakenly asserts that

---

[2] It is worth mentioning that the California Homeowner Bill of Rights, which became effective in 2013, amended section 2924 to make it perfectly clear that "[n]o entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest." (§ 2924, subd. (a)(6).) The amendment does not apply here because it took effect after the events at issue. (See *Alvarez v. BAC Home Loans Servicing, L.P.* (2014) 228 Cal.App.4th 941, 950-951.)

2

"[n]othing in the [first amended complaint] or judicially noticed documents suggests that Aztec was not authorized to act for OneWest." In fact, Ram and Hafiz specifically alleged in no less than nine paragraphs in the complaint that Aztec "had no authority to record [the] Notice of Default." These allegations effectively assert that Aztec was not acting as OneWest's agent under section 2924, subdivision (a)(1) when the notice of default was recorded. These specific allegations trump the general allegation, and they leave me unable to join the majority's conclusion that the complaint irrefutably concedes that Aztec had authority to record the notice of default as OneWest's agent.[3] (See *Garton v. Title Ins. & Trust Co.* (1980) 106 Cal.App.3d 365, 376 ["specific allegations of a complaint [may] overcome [a] general allegation of agency by showing that no such relationship existed"].)

In short, I conclude that Ram and Hafiz sufficiently alleged that Aztec lacked authority to initiate the foreclosure either as OneWest's trustee or agent.

## II.

Even though Ram and Hafiz sufficiently alleged a statutory violation, their wrongful-foreclosure claim nonetheless fails because they did not allege prejudice. More specifically, they did not allege, even after having been given an opportunity to amend their complaint, that the foreclosure sale could have been avoided if there had been no statutory violation.

As the majority correctly points out, prejudice is an element of a claim for wrongful foreclosure. (*Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1507; *Fontenot v. Wells Fargo Bank, N.A.* (2011)

---

[3] A reviewing court normally "resolve[s] all ambiguities and uncertainties raised by the demurrer against" the plaintiffs when, as here, a demurrer is sustained with leave to amend and the plaintiffs choose not to amend. (*Hooper v. Deukmejian* (1981) 122 Cal.App.3d 987, 994; see also *Holiday Matinee, Inc. v. Rambus, Inc.* (2004) 118 Cal.App.4th 1413, 1421.) But OneWest did not raise, and the trial court did not rely on, Aztec's agency as a ground for sustaining the demurrer. In such circumstances, it is improper to " 'presume[] that the complaint states as strong a case as is possible' " on the agency issue. (*Holiday Matinee*, at p. 1421.)

3

198 Cal.App.4th 256, 272; see also *Little v. CFS Service Corp.* (1987) 188 Cal.App.3d 1354, 1361-1362.) It is required not only for small deficiencies, but for big ones as well. For example, in *Fontenot*, Division One of this court required a showing of prejudice for a claim that the entity that conducted a foreclosure sale was not properly assigned the deed of trust: "[A] plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests. . . . Even if [a nominee beneficiary] lacked authority to transfer the note [to the entity that eventually foreclosed], it is difficult to conceive how [the borrower] was prejudiced by [the] purported assignment . . . ." (*Fontenot*, at p. 272.) This holding recognized that the entity prejudiced in such a case is not the borrower, but rather the proper beneficiary that was entitled to recourse on the loan. Similarly, relying on *Fontenot, Herrera* held that an allegation of prejudice was required even if the purported beneficiary lacked authority to foreclose or execute a substitution of trustee. (*Herrera*, at pp. 1505-1507.)

Ram and Hafiz effectively concede that they did not allege prejudice, but they argue they were excused from doing so because Aztec's alleged lack of authority to record the notice of default resulted in a "void," not just "voidable," sale. I am not persuaded. In my view, prejudice must be alleged regardless whether a sale is considered void or voidable.[4] (See *Herrera v. Federal National Mortgage Assn.*, *supra*, 205 Cal.App.4th at pp. 1505-1507; *Fontenot v. Wells Fargo Bank, N.A.*, *supra*, 198 Cal.App.4th at p. 272.) Borrowers whose property has been sold allege prejudice when they assert, as Ram and Hafiz did not, that, but for a statutory violation, the sale would not have happened and they would still possess the property. They do not

---

[4] I agree with my colleagues in the Fourth District Court of Appeal who found it ultimately "unhelpful to analyze trust deed nonjudicial foreclosure sales issues in the context of common law contract principles" like voidness and voidability. (*Residential Capital v. Cal-Western Reconveyance Corp.* (2003) 108 Cal.App.4th 807, 820.) The void/voidable distinction is routinely used by courts to distinguish between less and more serious failures to adhere to the nonjudicial foreclosure requirements, but in my view it is more helpful in most cases, and certainly this one, to focus first on whether the failure resulted in prejudice to the party asserting the claim.

4

necessarily allege prejudice merely by asserting that the sale occurred in the course of an imperfect nonjudicial foreclosure process.

I am aware of no published California decision directly addressing whether prejudice is required when, as is alleged here, an entity lacked authority when it initiated foreclosure proceedings but later was substituted as trustee. But I see no reason that this particular defect should alter the generally applicable requirement that a borrower must show prejudice to prevail in a wrongful-foreclosure action. The recording of a notice of default by an unauthorized entity could conceivably result in prejudice to borrowers under some circumstances, such as when it affects their ability to retain the property. But Ram's and Hafiz's failure here to allege that the foreclosure sale could have been avoided is fatal to their claim. I therefore concur with the majority in sustaining the trial court's grant of the demurrer.

5

_____
Humes, J.*



* Presiding Justice of the Court of Appeal, First Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:                    Contra Costa County Superior Court

Trial Judge:                    Honorable Steven K. Austin

Counsel for Appellant:          William E. Gilg

Counsel for Respondent:         Michael R. Farrell; Tim C. Hsu