Filed 7/6/16  Houston v. Wells Fargo Bank CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MARQUES D. HOUSTON et al., | B263834 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC528320) |
| v. | |
| WELLS FARGO BANK, N.A., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Stephanie M. Bowick, Judge.  Affirmed.

Stephen R. Golden & Associates, Stephen R. Golden, Elaine D. Etingoff for Plaintiffs and Appellants.

Anglin Flewelling Rasmussen Campbell & Trytten, Robert A. Bailey, Leigh O. Curran for Defendant and Respondent.

_____

After defaulting on a secured loan, plaintiffs brought suit against the lender to prevent a foreclosure sale. The trial court sustained demurrers to the second amended complaint without leave to amend, then dismissed the lawsuit. We affirm.

## FACTS[1]

Plaintiffs Marques and Alma Houston purchased real property in Los Angeles (the Property) in 1999, with a $146,268 loan. In 2007, they obtained a $368,000 adjustable rate loan from World Savings Bank (World), secured by a deed of trust on the Property (the Loan). World did not explain the Loan terms to plaintiffs. They were told that the interest rate and their payments would be fixed for five years; however, their rate increased after one year, then continued to increase annually.

In August 2011, plaintiffs obtained a modification from Wachovia Mortgage, a division of defendant Wells Fargo Bank (the Bank).[2] Three months later, plaintiffs asked the Bank for a further reduction in their payments: a representative informed plaintiffs that their payments could not be reduced at that moment, but suggested that plaintiffs could contact the Bank "after a year or so" to seek a reduced payment. Plaintiffs continued to make payments in hopes of obtaining a later reduction.

In January 2013, plaintiffs contacted the Bank to request another modification, only to be told that they did not qualify for a modification or for the Home Affordable Refinance Program. Plaintiffs "made repeated efforts" to obtain a modification in April 2013, but the Bank gave them "the run around," transferring their calls from one staff member to another.

---

[1]    The facts are taken from an unconformed copy of plaintiffs' second amended complaint (SAC). As noted in respondent's brief, the appendix is deficient in many respects.

[2]    World changed its name to Wachovia Mortgage, then merged into the Bank. (*Brown v. Wells Fargo Bank, NA* (2012) 204 Cal.App.4th 1353, 1355, fn. 1.) Plaintiffs' brief acknowledges that the Bank is the "successor by merger" of World. The Bank's divisions are not separate corporate entities. (*Akopyan v. Wells Fargo Home Mortgage, Inc.* (2013) 215 Cal.App.4th 120, 129, fn. 2.)

Plaintiffs began receiving collection letters and calls from the Bank, demanding that they bring their account current. At plaintiffs' request, the Bank sent them a letter purporting to attach a copy of plaintiffs' note and deed of trust, validating their obligation to the Bank. The letter did not include the note or the deed of trust.

In August 2013, the Bank notified plaintiffs that foreclosure was going to be started, and recorded a notice of default on September 6, 2013, without initiating contact with plaintiffs to discuss alternatives to foreclosure. Plaintiffs do not allege that a foreclosure sale took place. They filed this lawsuit on November 21, 2013.[3]

## DISCUSSION

### 1. Appeal and Review

Appeal lies from the judgment of dismissal after demurrers are sustained without leave to amend. (Code Civ. Proc., §§ 581d, 904.1, subd. (a)(1); *Serra Canyon Co. v. California Coastal Com.* (2004) 120 Cal.App.4th 663, 667.) Review is de novo. (*Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110, 1115.) We accept the truth of properly pleaded material facts, but not contentions, deductions or conclusions of fact or law; we may also consider matters subject to judicial notice. (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924.)

### 2. Preemption

For over 200 years, the Supreme Court has held that federal law is supreme over state law in the area of national banking. (*Watters v. Wachovia Bank, N.A.* (2007) 550 U.S. 1, 10-11.) The trial court concluded that plaintiffs' state statutory claims are preempted by the Home Owners' Loan Act, 12 U.S.C. § 1461 et seq. (HOLA). HOLA governs federally chartered savings and loan associations (also known as thrift institutions), superseding state laws purporting to address the operations of thrift institutions. The power to govern thrifts is vested in the Office of Thrift Supervision.

---

[3] The Bank removed the action to federal court because plaintiffs made a claim under the federal Real Estate Settlement Procedures Act (RESPA). The district court dismissed the RESPA claim, and returned the case to state court.

3

(*Akopyan v. Wells Fargo Home Mortgage, Inc.*, *supra*, 215 Cal.App.4th at p. 138; *Lopez v. World Savings & Loan Assn.* (2003) 105 Cal.App.4th 729, 734-742; 12 C.F.R. §§ 545.2, 560.2 (2012) [preemption clauses].) HOLA and its attendant regulations are a "'comprehensive response'" to existing state laws, and "'so pervasive as to leave no room for state regulatory control.'" (*Silvas v. E\*Trade Mortg. Corp.* (9th Cir. 2008) 514 F.3d 1001, 1004.) HOLA preempts state laws in the field of thrift lending operations. (*Ibid.*; *Harris v. Wachovia Mortgage, FSB* (2010) 185 Cal.App.4th 1018, 1024-1025.)[4]

Plaintiffs' Loan originated with World, a federally chartered thrift institution. The Bank succeeded to the Loan by virtue of a corporate merger. (See fn. 2, *ante*.) HOLA applies when a successor entity acquires a thrift institution loan. (*Akopyan v. Wells Fargo Home Mortgage, Inc.*, *supra*, 215 Cal.App.4th at p. 148 [HOLA preemption travels with a thrift-originated loan, even if sold to a non-thrift like the Bank]; *Appling v. Wachovia Mortg., FSB* (N.D.Cal. 2010) 745 F.Supp.2d 961, 971 [though the Bank itself is not subject to HOLA, a loan that originated with World remains subject to HOLA following merger with the Bank]; *Terrazas v. Wells Fargo Bank, N.A.*(2013) 2013 U.S. Dist. LEXIS 153046, \*8-9.) Thus, HOLA applies not only to World's conduct when it originated the Loan, but also to the Bank's alleged conduct after it succeeded World as the lender. (*Metzger v. Wells Fargo Bank, N.A.* (2014) 2014 U.S. Dist. LEXIS 59427, \*8-14.) Plaintiffs expressly agreed when they signed the Loan that the governing law is federal law and federal regulations for federally chartered savings institutions. In other words, plaintiffs agreed to be bound by HOLA.

HOLA bars claims for (1) failure to follow state procedures prior to a trustee's sale (Civ. Code, § 2924); (2) violations of the Homeowner Bill of Rights (HBOR) (Civ. Code,

---

[4]    Plaintiffs cannot rely on the Dodd-Frank Act provision regarding preemption (12 U.S.C. § 1465), because that act does not apply retroactively to contracts formed before its effective date in July 2010. (12 U.S.C. § 5553.) "Here, [plaintiffs] obtained [their] mortgage in 2007, well before Dodd-Frank took effect, and [are] subject to the HOLA preemption regime of the time." (*Meyer v. One West Bank, FSB* (C.D. Cal. 2015) 91 F.Supp.3d 1177, 1181.)

§ 2920.5 et seq.); (3) unlawful business practices (Bus. & Prof. Code § 17200); (4) declaratory relief regarding the Bank's authority to foreclose; (5) quieting title. (*DeLeon v. Wells Fargo Bank, N.A.* (N.D.Cal. 2010) 729 F.Supp.2d 1119, 1126-1128; *Metzger v. Wells Fargo Bank, N.A.*, *supra*, 2014 U.S. Dist. LEXIS 59427, *8-14.) Plaintiffs' similar claims are preempted because they involve mortgage servicing and processing, an area covered by HOLA, as are plaintiffs' fraud claims alleging World's inadequate disclosure of Loan rate terms and the Bank's failure to process or service the Loan fairly. (12 C.F.R. § 560.2(b)(9)-(10) (2012); *Garcia v. Wachovia Morg. Corp.* (C.D.Cal. 2009) 676 F.Supp.2d 895, 913 [failure to provide adjustable rate disclosure notice is preempted].)

### 3. The Claims Alleged in the SAC

Even without HOLA preemption, the SAC fails to state any cognizable claims.

#### a. *Lack of Standing*

Plaintiffs allege that the Bank had no standing to record a notice of default because it has no interest in the deed of trust or right to institute foreclosure. Their brief cites cases involving assignments of notes and trust deeds. (See *Yvanova v. New Century Mortgage Corp.*, *supra*, 62 Cal.4th at pp. 935-939 [after a foreclosure sale, a borrower may challenge an allegedly void assignment of the trust deed]; see also *Kan v. Guild Mortgage Co.* (2014) 230 Cal.App.4th 736 [a borrower cannot bring a preforeclosure challenge to a debt assignment].)

The Bank is not the assignee of plaintiffs' note and trust deed. The first paragraph of plaintiffs' brief acknowledges that the Bank is "f/k/a/" [formerly known as] World Savings. The Bank succeeded World—and acquired World's loans—in a corporate merger. (See Corp. Code, § 1107, subd. (a) [a surviving corporation following merger succeeds to all of the property of the disappearing corporation].)

A loan acquired by a bank in a merger is *not* an "assignment." (Former 24 C.F.R. § 3500.21(d)(B) (2008).) Because the Bank's postmerger ownership of loans originating with World did not arise from an assignment, the Bank has standing to foreclose. (See, e.g., *Bonete v. World Sav. Bank* (N.D.Cal. 2015) 2015 U.S. Dist. LEXIS 95046, *11-12;

*Kenery v. Wells Fargo, N.A.*(N.D.Cal. 2014) 2014 U.S. Dist. LEXIS 117550, *24.) The Bank is "the lender," albeit under a new name.

The SAC undermines plaintiffs' standing claim. It alleges that plaintiffs entered a modification agreement in 2011 with Wachovia Mortgage, a division of the Bank. Plaintiffs agree that the Bank had authority to negotiate a loan modification, made alleged promises about a further modification down the road, accepted their loan payments, and then failed to discuss plaintiffs' financial situation before filing a notice of default. On the other hand, plaintiffs argue that the Bank, which authorized their loan modification, lacks power to foreclose because it does not own their loan. Plaintiffs' factually inconsistent positions are untenable. The SAC gives every indication that plaintiffs recognize the Bank as their lender.

b. *Wrongful Foreclosure*

Plaintiffs assert a cause of action for wrongful foreclosure. Wrongful foreclosure means that a plaintiff seeks to set aside a foreclosure sale, or obtain damages resulting from the sale. (*Lane v. Vitek Real Estate Industries Group* (E.D.Cal. 2010) 713 F.Supp.2d 1092, 1097; *Miles v. Deutsche Bank National Trust Co.* (2015) 236 Cal.App.4th 394, 408-409.) The elements of the claim are: (1) the trustee caused an illegal, fraudulent or willfully oppressive sale of real property pursuant to a deed of trust; (2) the plaintiff suffered prejudice or harm; and (3) the trustor tendered the amount of the secured indebtedness or was excused from tendering. (*Ram v. OneWest Bank, FSB* (2015) 234 Cal.App.4th 1, 10-11; *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 800.)

Plaintiffs have not established a wrongful foreclosure claim. They do not allege that there was an illegal, fraudulent or oppressive sale of real property pursuant to a deed of trust. In fact, they do not allege *any* sale at all, let alone a wrongful sale, nor do they allege that they tendered the debt.

c. *HBOR Violations*

Plaintiffs claim that the declaration of compliance attached to the Bank's notice of default is inadequate. They rely on the HBOR, which states that a mortgage servicer

6

must ensure, before filing a notice of default, "that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information." (Civ. Code, § 2924.17, subd. (b).) This is moot: Nowhere in the SAC do plaintiffs deny their default on the Loan, or claim that their account was current when the Bank filed the notice of default. Plaintiffs tacitly admit that they defaulted, giving the Bank the right to proceed with foreclosure.

Plaintiffs complain that the Bank never assessed their financial situation or explored alternatives to foreclosure. (Civ. Code, § 2923.55, subd (b)(1)(B)(2).) Attached as an exhibit to the SAC is a declaration, signed by a vice president of loan documentation, stating that the Bank contacted the borrowers to assess their financial situation and explore options to avoid foreclosure. The SAC indicates that plaintiffs were granted a loan modification in 2011. A few months later, they asked for another reduction. Plaintiffs twice sought loan modifications in 2013. Their legal representative was also in contact with the Bank. On its face, the SAC shows that the parties engaged in discussions and loan modification activities for over two years, refuting any claim that the Bank failed to discuss plaintiffs' options.

Plaintiffs allege that the Bank failed to "establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact." (Civ. Code, § 2923.7, subd. (a).) The claim fails, because the SAC does not allege that plaintiffs ever asked the Bank to do so, and the statute specifies the Bank must establish a single point of contact "*[u]pon request from a borrower* who requests a foreclosure prevention alternative." (*Ibid*., italics added.)

Finally, plaintiffs state that they "requested copies of any assignment of their mortgage or deed of trust required to demonstrate the right of Wells Fargo to foreclose," but the Bank failed to provide assignment papers. As discussed in section 3(a), *ante*, the Bank is the owner of the Loan as successor to World. No assignment occurred, so the Bank could not (and need not) comply with plaintiffs' request.

d. *Fraud*

Plaintiffs seek to assert a claim of fraud. They contend that they were misled when they entered the Loan transaction with World in 2007, because an unidentified person said that their payments would be at a fixed rate for five years.[5] In 2011, according to the SAC, a representative told plaintiffs that the Bank could not reduce their payments right then (they had just obtained a modification), but suggested that they "could contact Defendant and seek a reduced payment 'after a year or so.'" Plaintiffs relied upon this oral representation and made Loan payments, expecting that they would be able to reduce their payments in a year or so.

Plaintiffs have not put forward sufficient facts to constitute a cause of action for fraud, the elements of which are (1) a material misrepresentation; (2) knowledge of its falsity; (3) intent to induce reliance; and (4) justifiable detrimental reliance. (*Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1060.) With a corporate defendant, plaintiffs must allege the names of the persons who made misrepresentations, what they said, and their authority to speak for the corporation. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645.) There is no factual support for the notion that the persons plaintiffs spoke to had authority to assure (1) that no rate change would occur for five years, or (2) a further modification and reduction in plaintiffs' loan payments would be given after the 2011 modification. At most, a representative suggested that plaintiffs "seek" a modification, but did not promise one.

Plaintiffs offer ambiguity when definiteness is required. Merely hoping for a future loan modification is not justifiable detrimental reliance, and "[c]ontinuing to make payments on the loan . . . does not constitute detrimental reliance because [plaintiff] already had the obligation to make those payments." (*Lueras v. BAC Home Loans*

---

[5]     The statute of limitations on this alleged misrepresentation expired in 2011: the SAC states that the interest rate increased one year after plaintiffs obtained the Loan, putting them on notice in 2008 that the rate was not fixed for five years. (Code Civ. Proc., § 338, subd. (d) [three-year statute of limitations for fraud].)

8

*Servicing, L.P.* (2013) 221 Cal.App.4th 49, 79.)  Further, the Loan contains a clause barring oral modifications, undermining plaintiffs' claim of reliance on oral promises of a possible future modification.

         e. *Unlawful Business Practices*

Plaintiffs argue that the Bank violated HBOR provisions, giving rise to unlawful business practices.  Business and Professions Code section 17200 ""'borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.)  As discussed above, plaintiffs failed to allege facts showing a statutory violation.

         f. *Quiet Title*

A cause of action to quiet title seeks affirmative equitable relief, and one "who seeks equity must do equity.  It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." (*Shimpones v. Stickney* (1934) 219 Cal. 637, 649; *Lueras v. BAC Home Loans Servicing, LP*, *supra*, 221 Cal.App.4th at pp. 86-87 [a borrower may not quiet title against a secured lender without first paying the entire amount of the loan underlying the trust deed].)  Plaintiffs do not deny that they are in default on the Loan.  They have breached their contract by failing or refusing to pay their debt.  "One who violates his contract cannot have recourse to equity to support that very violation." (*Gavina v. Smith* (1944) 25 Cal.2d 501, 506.)

There are exceptions to the rule requiring a tender of the debt in an equitable action.  (See *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112-116.)  However, as discussed in the preceding sections, plaintiffs have failed to establish any legal claim against the Bank.  Without a viable legal claim against the Bank, plaintiffs cannot succeed with an equitable claim to quiet title.

## 4. <u>Leave to Amend</u>

Plaintiffs ask, in a cursory manner, for leave to amend in the event that the SAC fails to allege sufficient facts to state a claim.  Plaintiffs may request an amendment on appeal, even without a request to amend below.  (Code Civ. Proc., § 472c, subd. (a); *City*

*of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746.) The burden of showing a reasonable possibility that defects can be cured "is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) Plaintiffs have made no effort to show how they could amend their pleading to state a claim, thereby failing to carry their burden of convincing this court to allow them to file a fourth pleading.[6]

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


HOFFSTADT, J.

---

[6] In their reply, plaintiffs attempt to resurrect the RESPA claim that the federal district court dismissed. This cannot be done.