Filed 1/7/16  Grossman v. Wells Fargo Bank CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| WILLIAM GROSSMAN,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>WELLS FARGO BANK et al.,<br><br>     Defendants and Respondents. | A142701<br><br>(Contra Costa County<br>Super. Ct. No. MSC1300358) |

Appellant William Grossman defaulted on his mortgage, lost his home in a foreclosure sale, and then sued various entities seeking to undo the sale and to recover damages.  In his amended complaint, he alleged that the foreclosure was undertaken by an unauthorized entity that failed to follow lawful procedures, but he did not allege that he was wrongly induced to assume the mortgage, that he satisfied his obligations under the mortgage, or that he was given and relied on an offer to refinance the mortgage.  The trial court sustained respondents' demurrer and dismissed the complaint.  In this abbreviated opinion,[1] we affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

According to the allegations in the amended complaint, Grossman obtained an adjustable-rate mortgage for his Alamo home from Washington Mutual Bank in

_____

[1] Because Grossman's appeal raises no substantial issues of law or fact, we resolve this cause by abbreviated form of opinion as permitted by California Standards of Judicial Administration, section 8.1.

1

December 2007.  Respondent California Reconveyance Company was listed on the loan as trustee.  Washington Mutual transferred the mortgage in 2008 to the JPMorgan Mortgage Trust 2008-R2 Mortgage Pass-Through Certificates, Series 2008-RT (MBS Trust), with respondent Wells Fargo acting as trustee.  Respondent Chase Home Finance later assumed the servicing of the loan after it acquired Washington Mutual's assets.

A notice of default was entered in May 2010, indicating that the mortgage was $31,148.08 in arrears.  California Reconveyance issued a notice of trustee sale and scheduled a foreclosure sale for November 2010.  This notice of sale, according to the amended complaint, was void as a matter of law because it "was purportedly signed by Deborah Brignac," who is "reportedly one of the most prolific robo-signers in California," and her signature on the notice of sale was a "forgery."  Grossman's home was sold to Chase in a foreclosure sale in June 2011.

Grossman initiated this lawsuit in February 2013 against respondents Wells Fargo, Chase, and California Reconveyance.  The trial court sustained respondents' demurrer to the original complaint, and Grossman then filed his amended complaint.  In it, Grossman alleged causes of action for wrongful foreclosure, quiet title, fraud, cancellation of instruments, fraudulent business practices in violation of Business and Professions Code section 17200 et sequitur, and quasi-contract.  According to Grossman, "[t]he thrust of [the amended complaint] is that, as a result of fraudulent assignments and foreclosure documents, and egregious breaches of agreements governing the MBS TRUST to which [his] loan was allegedly sold in 2008, none of the Defendants named to this action is a beneficiary or real party in interest under [his] Deed of Trust, having the power to collect payments and or [*sic*] enforce the accompanying note.  [Grossman] contends that his mortgage loan became unsecured and that, consequently, no real party in interest existed at the time [his] home was sold.  Furthermore, none of the Defendants had contractual rights to collect mortgage payments from him or to exercise the power of sale under the Deed of Trust."  Stated another way, the amended complaint alleges that the transfer of the loan and its assumption by Chase were invalid and that respondents "tried to cover up

the botched securitization by fraudulently attempting to assign" the deed of trust to Chase six years after the loan already had been sold to the MBS Trust.

Respondents demurred to the amended complaint. In support of the demurrer, they asked the trial court to take judicial notice of various documents, and the trial court agreed to do so. The court sustained the demurrer in its entirety without leave to amend.

## II.
### DISCUSSION

*A. The Standard of Review.*

The rules governing our review of the trial court's ruling are well settled. "We review de novo the trial court's order sustaining a demurrer." (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1468.) In doing so, this court's only task is to determine whether the complaint states a cause of action. (*Gentry v. eBay, Inc.* (2002) 99 Cal.App.4th 816, 824.) We accept as true all well-pleaded allegations in the operative complaint, and we will reverse the trial court's order of dismissal if the factual allegations state a cause of action on any available legal theory. (*Id.* at p. 825; *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) We treat respondents' demurrer as admitting all properly pleaded material facts, but not contentions, deductions, or conclusions of fact or law. (*Evans*, at p. 6.) We also consider matters that may be judicially noticed, and a " ' "complaint otherwise good on its face is subject to demurrer when facts judicially noticed render it defective." ' " (*Ibid.*) Where, as here, "the trial court sustains a demurrer without leave to amend, we review the determination that no amendment could cure the defect in the complaint for an abuse of discretion. [Citation.] The trial court abuses its discretion if there is a reasonable possibility that the plaintiff could cure the defect by amendment. [Citation.] The plaintiff has the burden of proving that amendment would cure the legal defect, and may meet this burden on appeal. [Citations.]" (*Cansino*, at p. 1468.)

Our review of the trial court's order is limited to issues that have been adequately raised and supported in the appellate briefs. (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6; *Bagley v. International Harvester Co.* (1949) 91 Cal.App.2d 922, 926 [where

demurrer is sustained without leave to amend, appellant's failure to advance arguments in connection with one of several causes of action purportedly stated in complaint deemed an abandonment of such cause of action]; see also *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [issues not raised on appeal are waived].)

> B. *The First Cause of Action for Wrongful Foreclosure Fails Because Grossman Did Not Allege Tender or Prejudice.*

1. The Nonjudicial Foreclosure Process.

We begin with a general overview of the nonjudicial foreclosure process. A nonjudicial foreclosure sale is a "quick, inexpensive[,] and efficient remedy against a defaulting debtor/trustor." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830.) To preserve this remedy for beneficiaries while protecting the rights of borrowers, Civil Code "sections 2924 through 2924k provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust."[2] (*Moeller,* at p.830) Under a deed of trust, the trustee holds title and has the authority to sell the property in the event of a default on the mortgage. (See *Haynes v. EMC Mortgage Corp.* (2012) 205 Cal.App.4th 329, 333-336.) To initiate the foreclosure process, "[t]he trustee, mortgagee, or beneficiary, or any of their authorized agents" must first record a notice of default. (§ 2924, subd. (a)(1).) The notice of default must identify the deed of trust "by stating the name or names of the trustor or trustors" and provide a "statement that a breach of the obligation for which the mortgage or transfer in trust is security has occurred" and a "statement setting forth the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy [the] obligation . . . that is in default." (§ 2924, subd. (a)(1)(A)-(C).) After three months, a notice of sale must then be published, posted, mailed, and recorded in accordance with the time limits prescribed by the statute. (§§ 2924, subd. (a)(3), 2924f.)

---

[2] All statutory references are to the Civil Code unless otherwise specified.

4

" 'The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive[,] and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.' " (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154.)

"The 'traditional method' to challenge a nonjudicial foreclosure sale 'is a suit in equity . . . to have the sale set aside and to have the title restored.' [Citation.] Three elements must be proven: '(1) the trustee . . . caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a . . . deed of trust; (2) the party attacking the sale suffered prejudice or harm; and (3) the trustor . . . tenders the amount of the secured indebtedness or was excused from tendering.' " (*Ram v. OneWest Bank, FSB* (2015) 234 Cal.App.4th 1, 10-11 (*Ram*).)

Grossman devotes much of his legal argument to the first element of a cause of action for wrongful foreclosure, arguing that he alleged sufficient facts that the transfer of his loan was fraudulent and the subsequent sale of his home was therefore invalid. His claim was based on two primary allegations: Brignac's "forged" signature on the notice of trustee's sale and the foreclosing parties' failure to assign his loan to the trust that ordered the foreclosure. He argues at length that he properly alleged that respondents were not authorized to initiate foreclosure proceedings. We need not exhaustively address these arguments, because Grossman's cause of action fails for a separate and independent reason.

2. Grossman Did Not Allege Tender.

The trial court concluded, and we agree, that Grossman's cause of action for wrongful foreclosure fails because Grossman did not adequately allege tender, or any valid exception to tender. "Because the action is in equity, a defaulted borrower who seeks to set aside a trustee's sale is required to do equity before the court will exercise its equitable powers. [Citation.] Consequently, as a condition precedent to an action by the borrower to set aside the trustee's sale on the ground that the sale is voidable because of

5

irregularities in the sale notice or procedure, the borrower must offer to pay the full amount of the debt for which the property was security. [Citations.] 'The rationale behind the rule is that if [the borrower] could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the [borrower].' " (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112 (*Lona*).) It is apparently undisputed that Grossman did not offer to pay the full amount of his debt.

There are four exceptions to the tender requirement: "First, if the borrower's action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmation of the debt. [Citations.] [¶] Second, a tender will not be required when the person who seeks to set aside the trustee's sale has a counterclaim or setoff against the beneficiary. In such cases, it is deemed that the tender and the counterclaim offset one another, and if the offset is equal to or greater than the amount due, a tender is not required. [Citation.] [¶] Third, a tender may not be required where it would be inequitable to impose such a condition on the party challenging the sale. . . . [¶] Fourth, no tender will be required when the trustor is not required to rely on equity to attack the deed because the trustee's deed is void on its face." (*Lona*, *supra*, 202 Cal.App.4th at pp. 112-113.) As we shall explain, Grossman cannot avoid the tender requirement under these exceptions or for any other reason.

Grossman first claims he was not required to tender the balance of the loan because he sought damages, and "[t]ender is mandated only for claims seeking equitable relief." We are not persuaded for at least two reasons. First, it is not true that Grossman sought only damages. His amended complaint sought an order for respondents "to transfer legal title and Lawful possession of the subject property to" him and for the clerk "to execute a full Deed of Reconveyance of the Deed of Trust in favor of" him. Second, Grossman cannot change the nature of a cause of action and then claim he has established an exception to one of its elements. The cases Grossman cites do not support his argument. (*Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1109 [plaintiffs *required to allege tender* in order to maintain cause of action for irregularity in sale procedure]; *United States Cold Storage v. Great Western Savings & Loan Assn.*

(1985) 165 Cal.App.3d 1214, 1225 [analyzing whether *junior lienor* required to tender before seeking to set aside foreclosure sale].)

Grossman also contends that he is entitled to the exception that excuses a borrower from tender where the borrower has a counterclaim or setoff against the beneficiary. (*Lona*, *supra*, 202 Cal.App.4th at p. 113.)  He is mistaken.  This exception arises where, for example, plaintiffs seeking to set aside a sale of real property owe money on a note but claim they are entitled to a setoff because defendants failed to honor their part of the sale agreement to deliver personal property worth more than the money currently due on the note.  (*Hauger v. Gates* (1954) 42 Cal.2d 752, 753-755.)  Misconstruing the principle, Grossman asserts that he alleged damages "of no less than $250,000, which more than offset any default balance of his loan."  But as respondents note, Grossman's complaint does not specify $250,000 in damages, and it is unclear upon what facts he bases this figure in any event.  Grossman does not allege that he is owed money in connection with his loan agreement, only that he is entitled to unspecified damages, which are not contemplated in wrongful-foreclosure cases.

Lastly, Grossman contends "the tender rule does not apply to a sale that is void because it was obtained by fraud."  (*Lona*, *supra*, 202 Cal.App.4th at p. 113, citing *Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868, 878.)  Courts have applied this exception where a sale is found to be "void as opposed to merely voidable." (*Dimock*, at p. 876; cf. *Ram*, *supra*, 234 Cal.App.4th at pp. 18-19 [affirming sustaining of demurrer in wrongful-foreclosure case because alleged notice defects were "deemed voidable, not void"].)  Whether a borrower even has standing to challenge an assignment of a note and deed of trust on the basis of defects allegedly rendering the assignment void is currently before our Supreme Court.  (*Yvanova v. New Century Mortgage Corp.* (S218973), rev. granted Aug. 27, 2014.)  But even assuming Grossman sufficiently alleged standing, and even assuming that the transfer of his mortgage somehow excused him from the tender requirement, his claim fails for the independent reason that he did not allege prejudice.

7

### 3. Grossman Did Not Allege Prejudice.

Whether a plaintiff has alleged a void or voidable sale does not matter where plaintiff has failed to allege prejudice. "[Prejudice] is required not only for small deficiencies, but for big ones as well." (*Ram*, *supra*, 234 Cal.App.4th at p. 22 (conc. opn. of Humes, J.).) In *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, this court explicitly held that prejudice is required for a borrower to proceed on a claim that a foreclosure was carried out by an entity that was not properly assigned the deed of trust: "[A] plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests. . . . Even if [a nominee beneficiary] lacked authority to transfer the note [to the entity that eventually foreclosed], it is difficult to conceive how [the borrower] was prejudiced by [the] purported assignment . . . ." (*Fontenot*, at p. 272, citations omitted.) "This holding recognized that the entity prejudiced in such a case is not the borrower, but rather the proper beneficiary that was entitled to recourse on the loan. Similarly, relying on *Fontenot*, *Herrera* [*v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495] held that an allegation of prejudice was required even if the purported beneficiary lacked authority to foreclose or execute a substitution of trustee. (*Herrera*, at pp. 1505-1507.)" (*Ram*, *supra*, at pp. 22-23 (conc. opn. of Humes, J.).)

Grossman argues that he sufficiently established prejudice because he lost his home in a foreclosure sale and his credit was damaged. But this harm goes to the consequences of a foreclosure in general, not to harm caused by having one entity, rather than another, carry out the foreclosure. Prejudice in the context of a wrongful-foreclosure action is the harm inflicted by wrongdoing that interferes with a borrower's ability to pay on a note or leads to a foreclosure that would not have otherwise occurred. (E.g., *Herrera v. Federal National Mortgage Assn.*, *supra*, 205 Cal.App.4th at pp. 1507-1508.) Grossman's cause of action for wrongful foreclosure fails because he has not alleged such prejudice.

*C. Grossman's Second Cause of Action for Quiet Title Fails.*

In his opening brief, Grossman states in a heading that he sufficiently alleged a cause of action for quiet title by alleging that his loan was wrongly transferred and that Brignac's signature was forged. He also briefly mentions that a cause of action for quiet title "has many of the same elements" as a cause of action for wrongful foreclosure. But in its order sustaining respondents' demurrer, the trial court ruled that Grossman's cause of action to quiet title failed because he did not allege tender. This ruling was entirely proper. (See *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 86-87 [borrower cannot quiet title without discharging debt]; *Aguilar v. Bocci* (1974) 39 Cal.App.3d 475, 477 [same].) And by not arguing that the ruling was incorrect, Grossman has thereby abandoned any such argument. (*Ram*, *supra*, 234 Cal.App.4th at p. 21, fn. 2 [where demurrer sustained without leave to amend, appellant's failure to raise arguments in connection with one of several causes of action is deemed abandonment of that cause of action].)

*D. Grossman's Third Cause of Action for Fraud Fails.*

Grossman similarly contends that he sufficiently alleged a cause of action for fraud by alleging that his loan was wrongly transferred and that Brignac forged her signature. Again, we disagree.

"The elements of intentional misrepresentation, or actual fraud, are: '(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage.' " (*Anderson v. Deloitte & Touche* (1997) 56 Cal.App.4th 1468, 1474; see also §§ 1709, 1710.) " 'Fraud actions . . . are subject to strict requirements of particularity in pleading. The idea seems to be that allegations of fraud involve a serious attack on character, and fairness to the defendant demands that he should receive the fullest possible details of the charge in order to prepare his defense. Accordingly the rule is everywhere followed that fraud must be specifically pleaded. The effect of this rule is twofold: (a) General pleading of the legal conclusion of "fraud" is insufficient; the facts constituting the fraud must be alleged.

9

(b) Every element of the cause of action for fraud must be alleged in the proper manner (i.e., factually and specifically), and the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect.' " (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216.)  "This particularity requirement necessitates pleading *facts* which 'show how, when, where, to whom, and by what means the representations were tendered.' " (*Stansfield v. Starkey* (1990) 220 Cal.App.3d 59, 73, original italics.)

In sustaining respondents' demurrer to Grossman's fraud cause of action, the trial court concluded that Grossman had failed to meet this heightened pleading standard.  We agree.  True enough, Grossman generally alleged that he justifiably relied on respondents' "false representations" during the foreclosure proceedings.  He alleged that "the issuance of the fraudulent assignment of [the deed of trust] was necessary for the initiation of foreclosure proceedings.  The ensuing [notice of default] and [notice of trustee sale] have negatively impaired [his] creditworthiness and has led to the loss of his home."  He further alleged that "[h]e has made mortgage payments to CHASE and its predecessors, which have no authority to collect payments and has been assessed costs and fees associated with the wrongful foreclosure activities of Defendants."  On appeal, Grossman summarizes these general allegations.  But none of these allegations plead with any particularity how the foreclosure resulted from any reliance Grossman may have placed on respondents' alleged conduct.  While the allegations aver, at most, that Grossman relied on the conduct by making some mortgage payments to the wrong entity, they do not aver that respondents' conduct caused him to do something that resulted in a foreclosure that was otherwise avoidable.

This case stands in stark contrast to *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, upon which Grossman relies.  There, plaintiff borrower presented evidence in opposition to a motion for summary judgment that her mortgage broker had forged plaintiff's signature on six loan documents, that a bank representative later advised her to miss a loan payment in order to qualify for a loan modification, and that the bank further told her it would not accept loan payments while it investigated the

10

forgery allegations. (*Id.* at pp. 187-188, 197-198.) The appellate court held that plaintiff had presented sufficient evidence to create a triable issue as to whether it was reasonable for plaintiff to rely on defendants' statements in stopping her loan payments. (*Id.* at pp. 199-200.) Here, by contrast, Grossman alleged that he made some payments to the wrong entity, not that he relied on false representations to miss payments that, if made, would have avoided the foreclosure.

It is true, as Grossman argues, that we must consider whether there is a reasonable possibility that any defect in his pleading could be cured by amendment. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) But the burden of showing such a reasonable possibility is on the appellant (*ibid.*), and Grossman has failed to meet this burden. He argues: "What could have happened had defendants revealed to Grossman the truth that the loan had not been actually transferred to JPMorgan Chase through the FDIC, or that Brignac's signature on the Notice of Trustee's sale was a forgery, and that they did not have the authority and power to foreclose? Defendants would have been compelled to restart the foreclosure. Had Grossman known that after the loan was assigned to an MBS Trust, and thus, was no longer an asset of WaMu, in August of 2008, they would have had to void all executed and recorded foreclosure documents, which would have prevented Grossman from being in default with JPMorgan Chase in the first place. would have provided Grossman another 20 days [*sic*]. [¶] In short, had defendants revealed the truth, Grossman would have not been in default with any of the named defendants. In the meantime, he could have used that time to find other financing [citation]. He could allege that his modification request by the actual real party in interest would have or could have been granted and he would have kept his home. Those potential allegations show reliance." But, again, in our view these allegations only amount to a claim that a wrong entity initiated foreclosure proceedings against him, not that his reliance on any of respondents' actions caused him to default on his loan. And his allegation that he might have received "another 20 days" to "find other financing" is entirely speculative.

11

Grossman's reliance on *Garcia v. World Savings, FSB* (2010) 183 Cal.App.4th 1031 also is misplaced. *Garcia* held that there was a triable issue of fact on plaintiff borrowers' cause of action for promissory estoppel because they produced evidence that they refinanced a mortgage on other property in reliance on defendants' statements they would extend the deadline for a trustee's sale until after plaintiffs received funds from the new loan on different property. (*Id.* at pp. 1035-1036, 1041.) The act of "procuring a high cost, high interest loan by using other property [plaintiffs] owned as security" (*id.* at p. 1041) is specific and detailed, whereas Grossman's proposed allegation that an additional 20 days *might* have helped him is not. The trial court correctly sustained respondents' demurrer on his fraud cause of action.

*E. Grossman's Remaining Causes of Action Fail.*

Finally, Grossman argues that because his remaining causes of action (for cancellation of instruments, fraudulent business practices in violation of Business and Professions Code section 17200 et sequitur, and quasi-contract) were based on his causes of action for wrongful foreclosure and fraud, they should be reinstated along with those claims. Because we have rejected those causes of action, we decline to reinstate the remaining ones. (*Garcia v. World Savings, FSB*, *supra*, 183 Cal.App.4th at p. 1047 [where cause of action for unfair business practices was based on claim for wrongful foreclosure that was not reinstated, neither claim reinstated].)

III.
DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

12

                                                    _____

                                                    Humes, P.J.

We concur:

_____

Margulies, J.


_____

Banke, J.