Filed 12/9/25  Schutten v. Board of Trustees of the Cal. State University CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MARY SCHUTTEN,<br><br>      Plaintiff and Appellant,<br><br>  v.<br><br>BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY, ET AL.,<br><br>      Defendants and Respondents. | H052561<br>(Santa Clara County<br> Super. Ct. No. 22CV399032) |

In 2015, Mary Schutten was hired as a dean at San José State University.  Three years later, a new interim provost removed Schutten from this position.  Although Schutten was allowed to "retreat" to the faculty as a full professor, she instead obtained an appointment as provost at another university, and in light of that appointment, her employment at San José State University was terminated.

In 2021, Schutten sued the Board of Trustees of the California State University (CSU), albeit under the wrong name.  She asserted age and gender discrimination, retaliation, hostile work environment, and other claims.  After discovery, CSU moved for summary judgment, which the trial court granted.

Schutten appeals, arguing that she raised triable issues concerning age (but not gender) discrimination as well as retaliation, hostile work environment, and wrongful termination. As explained below, we disagree and therefore affirm the judgment.

## I. BACKGROUND

As this appeal is from a summary judgment order, we take the facts below from the trial court record, resolving conflicts in the evidence and drawing reasonable inferences in favor of Schutten as the party opposing summary judgment. (See, e.g., *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037 (*Yanowitz*).)

### A. Schutten's Employment as Dean

Schutten was born in 1954. In March 2015, at the age of 61, she was hired to be the Dean of the College of Applied Arts and Sciences at San José State University. As this was a management position, it carried "no commitment of permanent status." However, if the university opted not to retain her as dean, Schutten was given the right to "retreat" to a tenured position as a full professor in the Department of Kinesiology.

When Schutten was hired, the president of the university was Mohammad Qayoumi, but he left in August 2015, the month after Schutten began working. Qayoumi was replaced first by an interim president and later by Mary Papazian, who served as president from July 2016 until 2021. Schutten reported to the provost, who was Andrew Feinstein, from Schutten's hiring until the summer of 2018. That summer, Dr. Joan Ficke became the interim provost.

As dean, Schutten received positive performance evaluations. Indeed, her August 2018 evaluation, which Ficke signed, recognized Schutten as the "(co-)senior-most dean" at the college, and it asked Schutten to "provide her leadership, insight, and counsel" to Ficke and to "take a significant role in mentoring our incoming dean of education."

2

However, in December 2018, Ficke removed Schutten as dean effective January 1, 2019 and placed Schutten on paid administrative leave until August 19, 2019, at which point she was to retreat to the Department of Kinesiology.

## B. The Emeritus Status Request and Removal of Schutten as Dean

Schutten's removal was precipitated by a retiring faculty member's request for emeritus status. A faculty member in the School of Information had to leave the university for medical reasons and the director of that school requested emeritus status on his behalf, apparently so that he could continue using university e-mail. Believing that all tenured faculty members had the right to emeritus status upon retirement, Schutten filed the appropriate paperwork.

Ficke denied the request. According to deposition testimony presented by Schutten, Ficke told Joanne Wright, the Senior Director of Academic Relations, that the request was denied because the faculty member was a lecturer rather than a professor. However, Schutten herself testified that Ficke did not want to confer emeritus status on anyone who had not been at the university for at least 10 years.

Whatever the rationale, Schutten questioned Ficke's decision. First, Schutten asked Ficke for clarification of the decision, but Ficke stood firm on it. Second, Schutten contacted Wright and an unnamed university attorney to confirm Schutten's understanding of the university's emeritus policy. In her deposition, Schutten explained that she was being "proactive" and trying to ensure that there would be no grievance for violating established policies.

Schutten's actions upset Ficke, who felt that Schutten was going behind her back. Ficke told Wright that she felt Schutten was questioning her authority and did not feel that she could continue to work with Schutten as dean. According to Schutten, Ficke then "punish[ed]" her by removing her as dean.

On December 31, 2018, approximately two weeks after Ficke formally notified Schutten of her removal, Schutten wrote Ficke and President Papazian seeking

3

reconsideration. In addition to listing her accomplishments as dean, Schutten addressed the "incident . . . named as a motivation for this decision," explaining that she merely asked for advice on what would happen if an academic policy was not followed "so that I could manage the faculty member in the best way possible." Ficke denied Schutten's request. Schutten again sought reconsideration, this time from President Papazian alone, reiterating that in the "incident . . . named as a motivation" for her removal she was seeking advice so that she could manage the faculty member in the best way possible. The president denied this request.

Schutten was replaced by an interim dean and then a new dean, both of whom were women in their 50s.

## C. Termination

Concerned about the substantially lower salary of a professor in light of the high cost of living in the Bay Area, Schutten applied for positions elsewhere. On May 1, 2019, she accepted an appointment as provost at Central Michigan University (with a nearly $100,000 increase in salary).

The next day, Schutten wrote President Papazian to propose that the university retain her as a faculty member with benefits but no salary until July 2020, so that her pension could vest. Although Schutten did not mention her appointment at Central Michigan University, Papazian learned of it and in a May 13, 2019 letter congratulated Schutten on the new position. However, Papazian denied Schutten's request to retain her on the CSU faculty. In so doing, Papazian noted that the arrangement Schutten proposed likely would not help her pension vest because CalPERS grants service credit only for active employment.

## D. Subsequent Applications for CSU Employment

Schutten worked as the provost at Central Michigan University until January 1, 2022, when she became a professor there. During this period, Schutten applied for positions at eight CSU institutions besides San José State University,

4

including chief of staff to the provost at Chico State University.  After Schutten interviewed for this position, a human resources employee at Chico State University contacted Wright to try to understand why Schutten would be interested in being a chief of staff to the provost after being a provost herself.  Schutten was not selected for a second interview, but the human resources employee testified that she did not rely on any information from Wright in making that decision; instead, the university president chose candidates with experience at Chico State University or in Sacramento.  All of Schutten's applications to the CSU system have been denied.

### E.  The Proceedings Below

In June 2021, Schutten sued, claiming age and gender discrimination under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), retaliation under FEHA, harassment and failure to prevent harassment under FEHA, wrongful termination, and unpaid wages.  (Subsequent undesignated statutory references are to the Government Code.)  Schutten named California State University and San José State University as defendants.  Because San José State University is not a legal entity separate from California State University, and California State University acts through its board of trustees, CSU moved to amend its answer to name the Board of Trustees of the California State University as the sole defendant, and over Schutten's opposition the trial court granted the motion.  The trial court also granted CSU's motion to change venue, from Los Angeles County, where Schutten filed, to Santa Clara County, where she had worked for CSU.

In February 2024, after the parties conducted discovery, CSU moved for summary judgment.  In so doing, CSU argued that Schutten's superiors had legitimate, non-discriminatory reasons for removing her as dean (her disagreement with Ficke over the emeritus policy) and terminating her employment (her appointment as provost at another university) and that Schutten had no evidence that these rationales were pretextual.  CSU also argued that Schutten failed to present any evidence that she engaged in protected

activity upon which a retaliation claim could be based or that she suffered conditions so severe and pervasive as to create a hostile work environment. Finally, CSU argued that Schutten's wrongful termination claim was dependent on her other claims and failed along with them, and that she failed to present any evidence of unpaid wages.

After a hearing, the transcript of which Schutten chose not to include in the record on appeal, the trial court granted summary judgment. The court determined that CSU had presented legitimate, nondiscriminatory reasons both for removing Schutten as dean and for terminating her, and that Schutten had failed to present evidence raising a triable issue concerning either pretext or discriminatory motive. The trial court also ruled that Schutten was barred from claiming that CSU discriminated against her in denying her subsequent job applications because the complaint did not include any allegations concerning those applications.

In addition, the trial court ruled that Schutten had failed to raise a triable issue concerning her other claims. Specifically, the court concluded that Schutten's retaliation claim failed because she had not presented evidence that CSU retaliated against her due to any protected conduct; indeed, the trial court observed Schutten had not presented evidence that Ficke, in denying the request for emeritus status for the retiring faculty member, even considered the member's age. The court also concluded that Schutten's harassment claim failed because she had not presented evidence sufficient to show a hostile work environment, and it concluded that Schutten's improper termination claim was dependent on her FEHA claims and therefore failed along with those claims. Finally, the trial court rejected Schutten's unpaid wages claim because Schutten failed to oppose CSU's arguments concerning that claim.

Schutten filed a timely notice of appeal.

## II. DISCUSSION

Schutten contends that the trial court erred in granting CSU summary judgment because she presented evidence raising triable issues concerning all of her claims. Before

6

addressing these contentions, we briefly review the standards governing summary judgment.

## A. Summary Judgments

Summary judgment is appropriate when "there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A party moving for summary judgment bears the initial burden of demonstrating both that there is no triable issue of material fact and that it is entitled to judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) To satisfy this burden, a defendant moving for summary judgment must demonstrate that the plaintiff's causes of action lack merit either because one or more of their elements cannot be established or because there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850.) If the defendant makes this initial showing, the burden shifts to the plaintiff to show a triable issue of material fact concerning the elements of the claims or defenses to them. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 849.)

In determining whether the parties have met their respective burdens, courts generally begin with the complaint because " '[t]he pleadings delimit the issues to be considered on a motion for summary judgment.' " (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1253 (*Laabs*).) Next, courts " 'consider[] all the evidence set forth in the moving and opposition papers except that to which objections were made and sustained.' " (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1035.) Evidence raises a triable issue concerning a material fact if it "would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion" on a claim raised in the pleadings. (*Aguilar*, *supra*, 25 Cal.4th at p. 850.) "A party cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact." (*LaChapelle v. Toyota Motor Credit Corp.* (2002) 102 Cal.App.4th 977, 981.)

On appeal, we review summary judgment orders de novo, applying the same rules and standards that govern a trial court's evaluation of summary judgment motions. (See e.g., *Hobbs v. City of Pacific Grove* (2022) 85 Cal.App.5th 311, 321). In so doing, "[w]e liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Yanowitz*, 36 Cal.4th at p. 1037.)

## B. Discrimination

Schutten's first cause of action is for discrimination under FEHA. Although the complaint alleges discrimination based on age, gender, and "related characteristics," on appeal Schutten focuses solely on age discrimination. As explained below, we conclude that CSU is entitled to judgment on this claim because it presented evidence of legitimate, nondiscriminatory reasons for removing Schutten as dean and for terminating her employment altogether, and because Schutten failed to raise a triable issue concerning either pretext or discriminatory motive.

### 1. *Applicable Law*

FEHA makes it unlawful for an employer to take an adverse employment action against an employee because of, among other things, the employee's age or gender. (§ 12940, subd. (a).) In evaluating discrimination claims under FEHA, California courts look to federal law and apply the three-stage, burden-shifting approach established in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792. (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 214 (*Harris*); *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*); *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 860 (*Serri*).)

Under this approach, a plaintiff claiming discrimination bears the initial burden of establishing a prima facie case of discrimination. (*Harris*, *supra*, 56 Cal.4th at p. 214; *Guz*, *supra*, 24 Cal.4th at pp. 354-355.) If this burden is satisfied, a presumption of discrimination arises, and the burden shifts to the employer to rebut the presumption by

8

offering a legitimate, nondiscriminatory reason for the challenged action. (*Harris*, at p. 214; *Guz*, at pp. 355-356.) Finally, if the employer offers such a reason, the presumption of discrimination disappears, and the burden shifts back to the plaintiff to present evidence that the reason proffered by the employer was a pretext for discrimination or to present other evidence of discriminatory motive. (*Harris*, at pp. 214-215; *Guz*, at p. 356.)

On summary judgment, the burdens shift. When an employer moves for summary judgment on a discrimination claim, it bears the initial burden of demonstrating that no unlawful discrimination occurred, either by presenting evidence that an element of the prima facie case is lacking, or that the employer acted for a legitimate, nondiscriminatory reason. (*Wawrzenski v. United Airlines, Inc.* (2024) 106 Cal.App.5th 663, 685 (*Wawrzenski*); *Martin v. Board of Trustees of California State University* (2023) 97 Cal.App.5th 149, 162 (*Martin*).) In addition, when an employer presents evidence that it acted for a legitimate, nondiscriminatory reason, it is entitled to summary judgment if, in light of that reason, "the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory." (*Guz*, *supra*, 24 Cal.4th at p. 361, fn. omitted.)

### 2. Analysis

Schutten asserts that the CSU failed to satisfy its initial burden on summary judgment because the only evidence that it presented was "a deed of trust, several corporate formation documents, and a declaration from one of Respondent's employees." This assertion appears to be inadvertently recycled from a different case because CSU did not present a deed of trust or corporate formation documents in support of its motion for summary judgment.[*] Instead, CSU presented evidence that Schutten was removed from

---

[*] Schutten's assertion that the trial court impermissibly made findings of fact is equally unfounded. As the very pages cited by Schutten show, far from making findings of fact, the trial court repeatedly concluded that Schutten "fail[ed] to demonstrate the existence of a triable issue of material fact."

9

the position of dean and later terminated for legitimate, non-discriminatory reasons, which plainly satisfied CSU's initial burden on summary judgment. (*Wawrzenski*, *supra*, 106 Cal.App.5th at p. 685; *Martin*, *supra*, 97 Cal.App.5th at p. 162.) In addition, Schutten failed to present evidence showing that these reasons were pretextual or to present other evidence of a discriminatory motive. We therefore conclude that Schutten failed to raise a triable issue concerning discrimination, and CSU is entitled to judgment on her discrimination claim.

    a.  <u>Removal</u>

CSU presented evidence that Schutten was removed because of insubordination, which is a legitimate, non-discriminatory reason. (See, e.g., *Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1006.) Far from showing that this rationale was pretextual, Schutten provided additional evidence that CSU acted for this reason. In addition, Schutten failed to present other evidence that her removal was motivated by discriminatory animus.

In moving for summary judgment, CSU presented several pages from Schutten's deposition in which she testified that her removal was prompted by a disagreement with Interim Provost Ficke over the denial of a retiring faculty member's request for emeritus status and, specifically, Schutten's continued questioning of Ficke's decision. Rather than submit evidence that this rationale was pretextual, Schutten presented excerpts from her deposition reinforcing the rationale. In those excerpts, Schutten testified that, after Ficke denied the emeritus request, she (Schutten) asked the provost for clarification, and when the provost stood firm, Schutten consulted a lawyer and the director of academic relations concerning the faculty member's rights. These actions, Schutten continued, upset Ficke, who then punished her by removing her as dean.

Schutten also presented other evidence confirming that Ficke removed her for insubordination. For example, Schutten submitted deposition testimony from Wright, the director of academic relations, who testified that Ficke believed Schutten was

10

"questioning her authority" and, as a result, Ficke "didn't feel that she could continue working [Schutten] as Dean." Schutten's letters to Ficke and to the president of the university seeking reconsideration of her removal also confirm that Schutten was removed because of her perceived insubordination. In both Schutten acknowledged that the "named" motivation for her removal was her request for advice concerning Ficke's denial of emeritus status, which Schutten tried to justify by explaining that she was seeking information regarding the consequences of Ficke's decision in order to "manage the faculty member in the best way possible." Thus, far from presenting evidence that the legitimate, non-discriminatory rationale offered by CSU for her removal was pretextual, Schutten presented evidence confirming that she was removed for insubordination.

On appeal, Schutten nonetheless asserts that the insubordination rationale was pretextual. In so doing, Schutten notes that four types of evidence may be used to show pretext: (1) comparative evidence, (2) statistics, (3) failure to follow ordinary policies and procedures, and (4) direct evidence. However, Schutten does not point to any comparative evidence, statistics, or applicable procedures. (Although Schutten asserts the university's collective bargaining agreement entitled the retiring employee to emeritus status, the trial court sustained CSU's objection to the evidence of the policy submitted by Schutten, and Schutten has not appealed that ruling.) Nor does Schutten present any direct evidence that Ficke removed her because of her age or general hostility to older employees.

Citing *Flait v. North American Watch Corp*. (1992) 3 Cal.App.4th 467 (*Flait*), Schutten also asserts that pretext can be inferred from "indirect evidence" such as an employee's job performance before termination. However, *Flait* did not find a triable issue solely because of the plaintiff's job performance. Instead, *Flait* found that the plaintiff's job performance undermined the non-discriminatory reason proffered for terminating him. In *Flait*, the employer asserted that it fired a sales representative

11

because he was too loyal to his customers and did not insist that they carry a balanced representation of the employer's products. (*Id.* at p. 479.) However, the employer conceded that it alone accepted customer orders and therefore controlled whether customers carried a balanced representation. (*Ibid.*) In addition, while the employer asserted that it had to reject many of the representative's orders for not requiring a balanced representation, that assertion was belied by the increases in the representative's sales in the year before his termination. (*Ibid.*) By contrast, here, the rationale offered for removing Schutten as dean—her insubordination in the emeritus dispute—has nothing to do with Schutten's performance of her duties, and therefore Schutten's admittedly excellent performance does not cast doubt on the proffered rationale for her removal.

*Moore v. Regents of University of California* (2016) 248 Cal.App.4th 216 does not help Schutten. In *Moore*, a laid off employee sued for disability discrimination and failure to accommodate. (*Id.* at p. 230.) Although the employer contended that the employee was laid off due to a restructuring that eliminated her position, the employee presented evidence that the employer in fact began eliminating her duties before the restructuring and that in the restructuring it failed to follow its own policies and procedures in laying her off, rather than laying off a more junior employee with similar skills, or permitting her to seek reassignment or transfer. (*Id.* at pp. 238-240.) In addition, the employee presented direct evidence that she was terminated because of concerns that her perceived disability could become a liability for the employer. (*Id.* at pp. 240-241.) By contrast, here, there is no evidence that the proffered rationale was false, nor any direct evidence of discriminatory motive.

Schutten does assert that she presented direct evidence of discriminatory motive. In particular, Schutten contends that "[a] reasonable trier of fact could conclude from the evidence that Respondent had a discriminatory motive in subjecting Appellant to adverse employment actions, including demotions and wrongful termination." However, while Schutten cites more than 22 passages from the record, she fails to describe what evidence

12

they contain, much less explain how they show that Ficke decided not to retain Schutten because of Schutten's age. Such unexplained conclusory assertions are "wholly inadequate to tender a basis for relief on appeal." (*Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435); see also *Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1075 (*Delta Stewardship Cases*) ["When an appellant . . . fails to support [a point] with reasoned argument and citations to authority, we treat the point as forfeited."].)

In any event, Schutten has cited little evidence of age-related animus directed at her and no evidence at all that she was removed as dean because of her age. Schutten asserts that she was "subjected to pervasive harassment through negative comments about her age" and the age of co-employees. However, when asked whether any comments about age were directed at her, Schutten responded "[n]o . . . [u]nless you want to take . . . being a senior member in my second or third year, which is likely true." These comments were made in her evaluations, where she was described as the "(co-)senior most dean at the university." But, far from denigrating Schutten because of her seniority, these evaluations asked Schutten, in light of this seniority, to "provide her leadership, insight, and counsel to the incoming interim provost" and encouraged her to mentor new deans.

Schutten also testified that she engaged in some "banter" about her "old, . . . aching bones." However, this banter was not with Interim Provost Ficke, who made the decision to remove Schutten as dean. Instead, the banter was with Andrew Feinstein, Ficke's predecessor, and there is no evidence that Feinstein had any involvement in the removal decision. In addition, the banter did not concern Schutten's job performance. Instead, Feinstein, who was about 50 at the time, would comment about how he was physically active and liked to boogie board, and Schutten, who was a former college swim coach and certified lifeguard, would respond that she probably would be the one rescuing him.

13

Schutten also noted some comments made about two professors in their 70s being "too old and ineffective," mockery of a 90-year-old music director, and a comment by former president Qayoumi about the age of a dean. However, none of the negative comments are attributed to either Ficke, who made the decision to remove Schutten, or President Papazian, who upheld that decision, and there is no evidence that anyone who made the comments was involved in the decision. Consequently, these comments fail to raise a triable issue whether Schutten was removed because of her age. (See, e.g., *Arnold v. Dignity health* (2020) 53 Cal.App.5th 412, 427-428; *Serri*, *supra*, 226 Cal.App.4th at pp. 867-868; *Horn v. Cushman & Wakefield Western* (1999) 72 Cal.App.4th 798, 809-810; see also *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 541 ["stray remarks may not have strong probative value when viewed in isolation"].)

### b. Termination

CSU offered a legitimate, non-discriminatory reason for terminating Schutten when it informed her of the termination: Schutten had "accepted a position at another institution," namely, provost at Central Michigan University. In the trial court, Schutten presented testimony that four employees were permitted to teach at SJSU while holding jobs elsewhere, one as a professor at another university and three as nurses working in hospitals. Because these employees, unlike Schutten under her proposed plan, were working at CSU, their situations were plainly distinguishable, and therefore their treatment does not suggest that the rationale for terminating Schutten was false. Accordingly, the trial court properly concluded that Schutten failed to present any evidence undermining CSU's explanation for Schutten's termination. Nor does Schutten point to any other evidence suggesting that the reason offered for terminating her was pretextual. As a consequence, we must conclude that the trial court's ruling was correct. (See, e.g., *Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 (*Jameson*).)

14

c. Interference with Rehiring

Schutten contends that SJSU discriminated against her by preventing her from being rehired into the CSU system and thereby vesting her pension. The trial court rejected this argument because the complaint does not contain allegations concerning the failure to rehire Schutten, and a plaintiff opposing summary judgment " 'cannot bring up new, unpleaded issues.' " (*Laabs*, *supra*, 163 Cal.App.4th at p. 1253.) Here again, Schutten does not challenge the trial court's ruling in her briefing on appeal.

We therefore conclude that CSU is entitled to summary judgment on Schutten's discrimination claim.

## C. Retaliation

In her second cause of action, Schutten claimed that she was terminated because she protested "unlawful []conduct." On summary judgment, the trial court assumed that the alleged unlawful conduct was Ficke's denial of emeritus status for the retiring faculty member. The trial court granted summary judgment to CSU on this claim because Schutten failed to present any evidence that Ficke considered the faculty member's age in denying him emeritus status. As explained below, we agree that Schutten failed to raise a triable issue concerning retaliation.

### 1. Applicable Law

FEHA makes it unlawful for an employer " 'to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden" under the statute. (§ 12940, subd. (h).) To a establish a prima facie case of retaliation under FEHA, a plaintiff must satisfy three requirements: " '(1) [H]e or she engaged in a "protected activity," (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action.' " (*Choochagi v. Barracuda Networks, Inc.* (2020) 60 Cal.App.5th 444, 460.)

An employee engages in "protected activity" for purposes of the first requirement if she "oppose[s] any practices forbidden under this part [FEHA]," or she testifies or

15

assists in any proceeding under the FEHA. (§ 12940, subd. (h); see *Yanowitz*, *supra*, 36 Cal.4th at p. 1042.) In addition, " '[p]rotected activity' " under FEHA includes " 'oppos[ing] conduct that the employee reasonably and in good faith believes to be discriminatory, whether or not the challenged conduct is ultimately found to violate the FEHA.' " (*Wawrzenski*, *supra*, 106 Cal.App.5th at p. 700.)

### 2. Analysis

As the trial court recognized, Schutten has not made out a prima facie case of retaliation. Schutten presented evidence that she was removed as dean because she questioned Ficke's denial of emeritus status to a retiring faculty member. However, she did not present any evidence that this decision violated FEHA and therefore failed to raise a triable issue whether she "opposed any practices forbidden" under FEHA. (§ 12940, subd. (h).)

In opposing denial of emeritus status to the retiring faculty member, Schutten did not oppose a practice forbidden by FEHA. FEHA prohibits employers from discriminating against employees because of race, gender, religion, national origin, and a number of other characteristics. (§ 12940, subd. (a).) It does not prohibit universities from denying emeritus status to faculty, whether or not doing so would violate an agreement, academic policy, or even a legal requirement not enumerated by FEHA. (See *Nejadian v. County of Los Angeles* (2019) 40 Cal.App.5th 703, 723 [noting that FEHA does not prohibit refusal to participate in activities that violate any state, federal, or local statues, rules or regulations].)

In addition, there was no evidence that the retiring faculty member was denied emeritus status because of his age. Schutten testified that the faculty member had to step away from the university for "a medical reason," and that Ficke denied the request for emeritus status because the faculty member had not been at the university for ten years. Schutten also presented testimony from Wright that Ficke denied the emeritus request because the faculty member was a lecturer rather than a professor. However, as the trial

16

court recognized, Schutten presented no evidence that Ficke denied the retiring faculty member emeritus status because of his age.  Indeed, Schutten did not even present evidence of the age of the faculty member in question, and Schutten's testimony that the member had been at CSU for less than 10 years suggests that he may not have been over 40 years old.

At oral argument, Schutten asserted that it may be inferred that the faculty member at issue was older because he was retiring and seeking emeritus status.  It is well-settled that " ' "[a]n appellate court is not required to consider any point made for the first time at oral argument" ' " and that any such points generally " ' "will be deemed waived." ' " (*People v. Arrendondo* (2019) 8 Cal.5th 694, 710, fn. 5; see *Ramirez v. Charter Communications, Inc*. (2024) 16 Cal.5th 478, 500.)  In addition, Schutten's inference is questionable.  "[E]meritus" means "holding after retirement (as from professional or academic office) an honorary title corresponding to that held last during active service" (Webster's 3d New Internat. Dict. (1993) p. 741, col. 2; see also American Heritage Dict. (5th ed. 2011) p. 583, col. 2 ["Retired but retaining an honorary title corresponding to that held immediately before retirement"]), and "retirement" in turn means "withdrawal from office, active service, or business" (Webster's 3d New Internat. Dict., *supra*, p. 1939, col. 2; see also American Heritage Dict., *supra*, p. 1499, col. 1 ["Withdrawal from one's occupation or position, especially upon reaching a certain age"]).  It is true that retirement is usually taken due to age (American Heritage Dict., *supra*, p. 1499, col. 1), but it also can be taken due to illness or disability (see Black's Law Dictionary (11th ed. 2019) p. 1574, col. 1 [defining retirement to mean "[t]ermination of one's own employment or career, esp., upon reaching a certain age or *for health reasons*" (italics added))—which is clearly a possibility here because the faculty member in question had been at the university for less than ten years and left because of "a medical reason."  As a consequence, it cannot be inferred that the faculty member at issue in this case was older just because he retired and a colleague sought emeritus status on his behalf.

17

We therefore conclude that Schutten has failed to show that Ficke's denial of emeritus status was a practice forbidden by FEHA and, thus, that her opposition to that decision was protected activity under FEHA.

Schutten also asserts that, even if Ficke did not deny the request for emeritus status because of the age of the retiring faculty member, Schutten still can assert a valid claim for retaliation because she protested "perceived age discrimination" and, indeed, CSU admitted removing her as dean because she raised concerns that CSU was "engaging in unlawful discrimination against a fellow employee based upon his age." However, Schutten fails to identify any evidence that she protested against perceived age discrimination or that CSU admitted such discrimination. Instead, Schutten simply cites approximately 50 pages in the appendix. This is not sufficient. As appellant, Schutten bears the burden of demonstrating that the trial court committed reversible error (*Jameson*, *supra*, 5 Cal.5th at p. 609; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564), and she cannot satisfy that burden by pointing without explanation to a number of pages in the record and assuming that the court will construct a theory supportive of her position based on review of that evidence. (See *People v. Stanley* (1995) 10 Cal.4th 764, 793; see also *Inyo Citizens for Better Planning v. Inyo County Board of Supervisors* (2009) 180 Cal.App.4th 1, 13 [" 'We are not required to search the record to ascertain whether it contains support for [a party's] contentions.' [Citation.] We do not serve as 'backup appellate counsel,' or make the parties' arguments for them."].)

In any event, the evidence cited by Schutten does not substantiate her assertion that she protested perceived age discrimination. About half of the evidence cited does not concern the emeritus request at all; instead, Schutten cites to evidence previously cited concerning negative comments about her and other employees besides the retiring faculty member for whom emeritus status was requested. Still other evidence cited concerns Schutten's recent applications for employment at CSU, the adverse action taken against Schutten, and her requests for reconsideration.

18

There is some evidence concerning the decision on the emeritus request and Schutten's subsequent actions. However, there is no evidence that Schutten protested any perceived age discrimination. To the contrary, Schutten testified that she believed that under the applicable rules, "emeritus status shall normally be conferred on each tenured factual member upon retirement" and that she investigated the correctness of Ficke's decision to deny emeritus status because she was "being proactive" and "trying to find out ways to make sure the director would not grieve the provost for an arbitrary decision." Wright similarly testified that Schutten contacted her about the emeritus policy to "confirm what she was reading in the policy" and seek clarification of the policy. There is no mention in any of this evidence of the age of the professor in question and, thus, no triable issue whether Schutten raised concerns about age discrimination.

Schutten asserts that an employer may not fire or otherwise take adverse action against an employee opposing discrimination against a fellow employee even if the complaining employee is mistaken and there was no discrimination. While that is correct, this principle is inapposite here because, as just shown, Schutten did not protest that the retiring faculty member was denied emeritus status due to age discrimination or other violation of FEHA. Moreover, even if Schutten had believed that the denial was based on age, that belief would not save her retaliation claim because she did not articulate that belief to SJSU. As the Supreme Court has noted, "[s]tanding alone, an employee's unarticulated belief that an employer is engaging in discrimination will not suffice to establish protected conduct for the purposes of establishing a prima facie case of retaliation." (*Yanowitz*, *supra*, 36 Cal.4th at p. 1046.)

We therefore conclude that CSU is entitled to summary judgment on Schutten's retaliation claim.

19

## D. Harassment and Failure to Prevent Harassment

In her third cause of action, Schutten claimed that CSU failed to take reasonable steps to prevent harassment. On appeal, she asserts there is a triable issue concerning whether she was subjected to harassment based upon age. Here again, we disagree.

FEHA requires employers "to take all reasonable steps necessary to prevent discrimination and harassment from occurring." (§ 12940, subd. (k).) To show harassment under FEHA, a plaintiff must show, among other things, that harassment based on age or other protected characteristic "unreasonably interfered with [the plaintiff's] work performance by creating an intimidating, hostile, or offensive work environment." (*Martin*, *supra*, 97 Cal.App.5th at p. 170.) A hostile work environment is not created by trivial, isolated, or sporadic harassment. (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 283.) Instead, to create a hostile work environment, conduct must be " 'severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees.' " (*Id*. at p. 279, italics omitted; see *Bailey v. San Francisco Dist. Attorney's Office* (2024) 16 Cal.5th 611, 628 (*Bailey*).)

Schutten has not presented evidence that she experienced harassment sufficiently severe or pervasive to create an abusive working environment. Citing approximately 30 pages of the record, she asserts that "[t]he evidence established that, during her employment, she directly experienced harassment and discrimination based upon her age." However, Schutten does not explain how the evidence cited demonstrates a hostile or abusive work environment. Indeed, Schutten devotes much of the space purportedly concerning her harassment claim to discussing how age-related comments may be probative of discriminatory intent—an issue irrelevant to her harassment claim. As a consequence, Schutten has failed to offer any meaningful argument concerning harassment and therefore has forfeited that point. (See *Delta Stewardship Cases*, *supra*, 48 Cal.App.5th 1014, 1075; see also *Allen v. City of Sacramento* (2015) 234 Cal.App.4th

20

41, 52 (*Allen*) ["It is the responsibility of the appellant . . . to support claims of error with meaningful argument and citation to authority."].)

In any event, Schutten's evidence falls far short of showing a hostile work environment. In arguing that she was subjected to harassment, Schutten cites to the same evidence of negative comments that she contended showed a discriminatory motive. As shown above, the only age-related remarks concerning Schutten's performance expressed appreciation for her experience, and the other comments about her age were occasional banter with the former provost at a weekly lunch with deans about his physical vigor. Even if this banter—which, it must be acknowledged, was from a supervisor—was inappropriate, it was not sufficiently severe or pervasive to create a hostile working environment. (*Bailey*, *supra*, 16 Cal.5th at p. 628 [" ' "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" ' are not sufficient to create an actionable claim of harassment."].)

The remaining evidence cited by Schutten does not raise a triable issue concerning harassment either. It is unclear whether some of the evidence cited by Schutten—for example, that an older dean was forced to leave after a Title IX issue was mishandled and that younger deans received positions and pay increases that Schutten did not—involves age discrimination. Other evidence, a story about a dean being told that he was too old, occurred before Schutten arrived at CSU. There is some evidence suggesting a hostility to older employees while Schutten was at the university: Schutten testified that she was told to get rid of two "old" faculty members who "were not working as well as they should" and that a 90-year-old music director was mocked because of his age. But this evidence does not show age-based harassment so severe and pervasive that it created an abusive working environment. (See, e.g., *Cornell v. Berkeley Tennis Club* (2017) 18 Cal.App.5th 908, 940-941; *Jones v. Department of Corrections & Rehabilitation* (2007) 152 Cal.App.4th 1367, 1378-1379.)

21

Accordingly, we conclude that summary judgment was properly entered on Schutten's harassment claim.

## E. Wrongful Termination

The trial court ruled that Schutten failed to raise a triable issue concerning her cause of action for wrongful termination because that claim was based on claims that the court had rejected. On appeal, Schutten contests this ruling, asserting that she presented evidence raising a triable issue concerning constructive discharge or termination. However, a claim for wrongful termination requires the violation of a statute or other fundamental public policy. (See, e.g., *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 169-170.) Schutten does not argue that she can show such a violation if her other claims fail. As a consequence, once again, Schutten has failed to support her appeal with any meaningful argument and therefore has forfeited the point at issue. (See, e.g., *Delta Stewardship Cases*, *supra*, 48 Cal.App.5th at p. 1075; *Allen*, *supra*, 234 Cal.App.4th at p. 52.)

## F. Unpaid Wages

Schutten also brought a claim for unpaid overtime wages. The trial court ruled that the claim failed because in her memorandum in opposition to CSU's motion for summary judgment Schutten made no argument concerning the claim. On appeal, Schutten asserts that she raised triable issues of fact concerning this case. However, she does not include in her brief any argument concerning this cause of action. Accordingly, this point has been forfeited as well. (See, e.g., *Delta Stewardship Cases*, *supra*, 48 Cal.App.5th at p. 1075; *Allen*, *supra*, 234 Cal.App.4th at p. 52.)

### III. DISPOSITION

The judgment is affirmed. Respondents are entitled to recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

22

_____

BROMBERG, J.

WE CONCUR:

_____

GREENWOOD, P. J.

_____

DANNER, J.

*Schutten v. Board of Trustees of California State University*
H052561